# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

Argued November 13, 2014        Decided July 7, 2015

No. 13-7012

GREGORY BOWYER AND GERALD PENNINGTON,
APPELLANTS

v.

DISTRICT OF COLUMBIA, ET AL.,
APPELLEES

---

Appeal from the United States District Court
for the District of Columbia
(No. 1:09-cv-00319)

---

*Donald M. Temple* argued the cause and filed the briefs for appellants.

*Holly M. Johnson*, Assistant Attorney General, Office of the Attorney General for the District of Columbia, argued the cause for appellees. With her on the briefs were *Irvin B. Nathan*, Attorney General, *Todd S. Kim*, Solicitor General, and *Loren L. AliKhan*, Deputy Solicitor General.

Before: HENDERSON, GRIFFITH, and MILLETT, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* GRIFFITH.

GRIFFITH, *Circuit Judge*:

Appellants Gregory Bowyer and Gerald Pennington sued the District of Columbia under the D.C. Whistleblower Protection Act, alleging that they were unlawfully reassigned to a less desirable position in retaliation for disclosures they allegedly made accusing their superiors of gross mismanagement and racial discrimination in the workplace. The district court granted summary judgment to the District, and we affirm, concluding that Bowyer and Pennington have failed to point to any evidence countering the District's legitimate, independent reason for reassigning them.

I

A

Bowyer and Pennington were investigators with the Fire Investigations Unit of the D.C. Fire and Emergency Medical Services Department (the Department) in 2001. In 2007, they locked horns with new Fire Chief Dennis Rubin and his Deputy Chief Gary Palmer over plans to diversify the entirely African-American Fire Investigations Unit. According to Bowyer and Pennington (the investigators), Rubin and Palmer put in place a race-based promotion policy that advanced unqualified white firefighters. Bowyer and Pennington filed complaints with the Department and with the Equal Employment Opportunity Commission in the summer of 2008, alleging racial discrimination.

During this same period, the investigators also found themselves at odds with the District's Office of the Attorney General over the way prosecutors handled two criminal cases. The first concerned the prosecution of Timothy Bridgewater

for possession of illegal fireworks and a firearm following a sting operation the investigators ran in July 2007. According to the investigators, the fireworks they collected from Bridgewater at the time of his arrest went missing while in the Fire Investigations Unit's custody. They also allege that the case file included staged photographs showing Bridgewater's firearm in the front seat of his car, differing from photographs that Bowyer had taken at the scene of the arrest with his own camera showing the firearm in the backseat. The investigators assert that they told the federal prosecutor handling the case of these irregularities in November 2007 and that Pennington requested off the case as a result.

Though the federal government soon dropped its case against Bridgewater, the District pursued its own. The investigators allege that their superiors ordered them, on threat of discipline, to meet with the District prosecutor handling the case. While nothing in the record suggests that they did not meet with the prosecutor, the investigators allege that Deputy Chief Palmer nonetheless stripped them of various work privileges and placed them in an office space with K-9 dogs in November 2007. The investigators aver that those penalties took place soon after they had told the federal prosecutor of the problems they had seen with the case against Bridgewater.

The investigators allege that they informed the District prosecutor of the missing fireworks and staged photos but that she pressed forward anyway. Bowyer eventually testified on behalf of Bridgewater's defense at a pretrial hearing, telling the same story of misconduct. The prosecutor, for her part, denied that either Bowyer or Pennington had ever shared their concerns with her, and she told her supervisors that Bowyer had perjured himself at the hearing.

The investigators again butted heads with District prosecutors after they arrested a juvenile called K.A. in June 2008 for arson following a house fire. The prosecution suffered a setback when a court quashed a confession K.A. gave during questioning by the investigators that continued, according to the District, despite the youth's request for counsel. Prosecutors were also incensed that Bowyer testified at trial that because a new colleague had bungled the initial investigation, he could not determine the cause of the fire even though he had signed an arrest warrant stating that it was arson.[1]

On August 21, 2008, D.C. Assistant Attorney General Robert Hildum told Fire Chief Rubin that District prosecutors would no longer prosecute cases that Bowyer or Pennington had investigated or call them to testify as witnesses. Soon after, Rubin ordered the investigators reassigned from the Fire Investigations Unit to the Community Services Unit, where their duties would involve menial tasks such as checking fire hydrants and installing batteries in smoke detectors.

The investigators sued Chief Rubin, Deputy Chief Palmer, and the District of Columbia in federal district court on February 19, 2009, claiming that this reassignment and their earlier loss of privileges in November 2007 were illegal acts of retaliation under the D.C. Whistleblower Protection Act, D.C. Code § 1-615.51 *et seq*. (DCWPA).[2]

---

[1] On cross-examination, Bowyer claimed he signed this form only on direct order from Deputy Chief Palmer after the officer who was supposed to sign refused.

[2] The complaint also alleged violations of 42 U.S.C. § 1983. The district court granted summary judgment to the defendants on these claims, *see Bowyer v. District of Columbia*, 910 F. Supp. 2d

B

A plaintiff asserting a claim under the DCWPA must establish a prima facie case that (1) he made a "protected disclosure"; (2) his supervisor took or threatened to take a "prohibited personnel action" against him; and (3) the protected disclosure was a "contributing factor" to the prohibited personnel action. *See* D.C. Code §§ 1-615.53(a), 1-615.54(b); *see also Crawford v. District of Columbia,* 891 A.2d 216, 218-19 (D.C. 2006); *Tabb v. District of Columbia*, 605 F. Supp. 2d 89, 98 (D.D.C. 2009). The Act's definition of a "protected disclosure" includes "any disclosure of information . . . that the employee reasonably believes evidences . . . [g]ross mismanagement . . . [or] [a] violation of a federal, state, or local law." D.C. Code § 1-615.52(a)(6).

The DCWPA adopts a burden-shifting scheme that in some ways parallels federal Title VII jurisprudence. Once a plaintiff has set forth a prima facie case by a preponderance of the evidence, the burden shifts to the defendant "to prove by clear and convincing evidence that the alleged [prohibited personnel] action would have occurred for legitimate, independent reasons even if the employee had not" made the protected disclosure. D.C. Code § 1-615.54(b); *see also Johnson v. District of Columbia*, 935 A.2d 1113, 1118 (D.C. 2007). If the defendant shows at summary judgment that there is no genuine issue of disputed fact as to its asserted legitimate, independent reason, the plaintiff must "counter[] the defense evidence" by "proffering contrary, admissible evidence that a jury might credit." *Johnson*, 935 A.2d at 1118 n.2. The plaintiff thus must come forward with credible evidence showing that

173, 199-213 (D.D.C. 2012), and the investigators do not challenge that part of the court's ruling.

the legitimate, independent reason the defendant offered was pretext for an actual, discriminatory motive or did not actually motivate the challenged personnel action. *See id.* at 1118.

C

Before the district court, the investigators conceded that the DCWPA did not create a private right of action against individuals. *Bowyer v. District of Columbia*, 2009 WL 3299815 at *2 (D.D.C. Oct. 14, 2009).[3] The district court thus dismissed Rubin and Palmer from the suit, leaving the District as the only remaining defendant. *Id.*[4]

After extensive discovery, the District moved for summary judgment. Three of the arguments the investigators made in response are relevant to this appeal. First, they argued that in November 2007, Deputy Chief Palmer stripped them of privileges and moved their workstations to a room that housed K-9 dogs in retaliation for their disclosures to prosecutors of anomalies in the Bridgewater investigation. Next, they argued

---

[3] The amended statute now authorizes such a cause of action, *see* D.C. Code § 1-615.54(a), but Bowyer and Pennington do not appeal the dismissal of Rubin and Palmer. In any event, we have previously held that the amendment did not have retroactive effect. *See Payne v. District of Columbia*, 722 F.3d 345, 351-53 (D.C. Cir. 2013).

[4] The court also dismissed any part of the complaint that arose from actions that occurred more than six months before the investigators filed their suit because they did not comply with the DCWPA's requirement that the mayor be provided with notice of the time, place, cause, and circumstances of their injury within six months of that injury. *See Bowyer*, 2009 WL 3299815 at *2. The court later reinstated those parts of the complaint, however, after the District repealed the statute's notice provision. *Bowyer v. District of Columbia*, 779 F. Supp. 2d 159, 165-66 (D.D.C. 2011).

that they were reassigned to the Community Services Unit in August 2008 in retaliation for their testimony during the trial of K.A. And finally, they argued that their reassignment was also retaliation for the complaints they filed with the Department and the Equal Employment Opportunity Commission (EEOC) alleging racial discrimination in the Fire Investigations Unit.

The district court granted the District's motion for summary judgment, concluding that Bowyer and Pennington failed to show that they had made protected disclosures in either the Bridgewater matter or the K.A. case. And even though the district court found that the complaints of racial discrimination filed with the EEOC were indeed protected disclosures, it held that the investigators had failed to show that those who reassigned them knew anything about the complaints. The court did not consider the similar complaints that Bowyer and Pennington filed with the Department.

This appeal followed. We have jurisdiction under 28 U.S.C. § 1291.

II

The investigators charge the district court with making two material errors. First, they argue the court erred by holding that they had not introduced evidence sufficient to show that they had made protected disclosures during the Bridgewater investigation. Second, they argue that the district court erred by failing to consider whether complaints they filed with the Department alleging racial discrimination caused their reassignment. We review the entry of summary judgment de novo, drawing all inferences from the evidence in favor of the nonmoving party. *See McCormick v. District of Columbia*, 752 F.3d 980, 984 (D.C. Cir. 2014). On de novo review, we may

8

affirm the district court's judgment on a different theory than used by the district court. *Id*. at 986.

The investigators argued in the district court that they made protected disclosures under the DCWPA when they told the federal and local prosecutors about alleged improprieties related to the Bridgewater investigation. The district court found their evidence insufficient to withstand the District's motion for summary judgment because they had not introduced anything beyond their own "self-serving and uncorroborated deposition testimony" showing that they had in fact made any disclosures. *Bowyer*, 910 F. Supp. 2d at 195. Before this court, the investigators challenge the district court's conclusion, arguing that the court misapplied the standard for summary judgment by not construing the facts in their favor. *Cf. Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970) (holding that courts should view facts "in the light most favorable to" the party opposing summary judgment). Curiously, the investigators now argue that their Bridgewater disclosures led to a different form of retaliation than the one they asserted below. No longer do they maintain those disclosures triggered their 2007 loss of privileges and move to a room shared by dogs. Instead, they argue for the first time that the Bridgewater disclosures were the reason for their 2008 reassignment to the Community Services Unit, and they doubled down on this position at oral argument, *see* Oral Arg. Tr. 5:23-6:15. In the district court, however, they had argued only that this reassignment was retaliation for their testimony during the trial of K.A. and for their complaints alleging racial discrimination.

"It is the general rule, of course, that a federal appellate court does not consider an issue not passed upon below." *Singleton v. Wulff*, 428 U.S. 106, 120 (1976). *See also* 10A CHARLES A. WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2716 at 282-85 & nn.12-13 (3d ed. 1998).

Because the investigators did not argue before the district court that their disclosures related to the Bridgewater case led to their reassignment to the Community Services Unit, we decline to consider this argument on appeal.[5]

This leaves only the question of whether the district court erred in overlooking the investigators' argument that the complaints they filed with the Department alleging racial discrimination triggered their allegedly retaliatory reassignment.

The district court recognized that the complaints filed with the EEOC were protected disclosures under the DCWPA. *Bowyer*, 910 F. Supp. 2d at 196. After all, those complaints alleged violations of local law prohibiting discrimination in the workplace. *Id*.; *see also* D.C. Code § 1-615.52(a)(6)(D). But the court correctly concluded that these complaints could not have contributed to the investigators' August 21, 2008, reassignment because they were filed after their transfer to the Community Services Unit had already taken place. *Bowyer*, 910 F. Supp. 2d at 198-99. Indeed, as the district court noted, the EEOC complaints even mention the reassignment. *Id*.

The district court, however, completely overlooked the complaints alleging racial discrimination in the Fire Investigations Unit that the investigators filed with the Department in June 2008, two months before they were reassigned. That was a mistake, to be sure. But it is an error that does not help the investigators rebut the District's explanation for the reassignments. There is no disputed question of material

---

[5] We need not address the district court's conclusion that the investigators failed to come forward at summary judgment with evidence sufficient to show that they made protected disclosures during the Bridgewater investigation.

fact in the record that the actual cause of the investigators' reassignment was the refusal of the Office of the Attorney General to take future cases involving them, not the complaints they filed with the Department. On August 21, 2008, District Deputy Attorney General Hildum informed Chief Rubin that District prosecutors would no longer allow Bowyer and Pennington to participate in court proceedings and would never again call them as witnesses due to objections from prosecutors concerning the roles they played in both the Bridgewater and K.A. cases. The investigators do not dispute that this conversation took place.

Later that same day, Rubin ordered an assistant fire chief to transfer Bowyer and Pennington out of the Fire Investigations Unit. Rubin explained in a declaration that "[w]orking with [District] prosecutors was the essential part of [the investigators'] job duties . . . [and] they could no[] longer perform this function" following the decision by the District's Office of the Attorney General. Hence the reassignment.

The District has made a showing that any reasonable juror would have to find by clear and convincing evidence that the refusal of the Office of the Attorney General to work with either Bowyer or Pennington was a "legitimate, independent reason[]" for their reassignment to the Community Services Unit. *See* D.C. Code § 1-615.54(b). Hildum informed Rubin that the investigators could no longer perform a core function of their jobs, and Rubin immediately ordered the reassignment. Just as a close temporal proximity between a protected disclosure and an act of retaliation suggests a causal connection, *see Cones v. Shalala*, 199 F.3d 512, 521 (D.C. Cir. 2000), we see a clear link between Hildum informing Rubin that prosecutors would no longer work with the investigators and Rubin's near-simultaneous decision to reassign them.

Significantly, the investigators never assert that the reason the District proffered for their reassignment was pretext. *Cf. Johnson*, 935 A.2d at 1118. Their only gesture in that direction is a footnote in their reply brief that Bowyer successfully defended disciplinary charges related to the K.A. investigation before an administrative trial board. But that is irrelevant to the question at hand. What matters under the DCWPA is the reason the District reassigned Bowyer and Pennington to the Community Services Unit. *See, e.g.*, *McCormick v. District of Columbia*, 752 F.3d 980, 986 (D.C. Cir. 2014) (disregarding an attempt by a plaintiff to show pretext by addressing a "wholly different factual question" than the defendant's legitimate, independent reason for taking an adverse action). The unrebutted explanation the District has offered is that the Department reassigned the investigators because District prosecutors refused to work with either of them and not because they had filed Equal Employment Opportunity complaints with the Department alleging racial discrimination. Because the investigators failed to rebut this explanation, we hold they have failed to demonstrate a genuine issue of disputed fact sufficient to survive summary judgment on their DCWPA claim.

## III

We affirm the district court's order granting summary judgment to the defendant District of Columbia.