Opinion for the Court filed by Circuit Judge MILLETT.
Dissenting Opinion filed by Circuit Judge BROWN.
MILLETT, Circuit Judge:
Following a major fire in which a highrise apartment building was destroyed, the District of Columbia Fire and Emergency Medical Services Department took disciplinary action against the Appellant, Fire Captain Vanessa Coleman. That disciplinary proceeding set off a series of charges and complaints by Coleman and counter-charges by the Department, culminating in Coleman’s discharge.
*53 Coleman subsequently filed a lawsuit that included a claim under the District of Columbia Whistleblower Protection Act (“Whistleblower Act”), D.C.Code §§ 1-615.51 et seq. On the Department’s motion for summary judgment, the district court grouped Coleman’s numerous communications with her supervisors into broad categories, and then granted summary judgment to the Department on the ground that most of those categories were not statutorily protected types of communications, and for the one group that was protected, the Department had articulated a legitimate, non-retaliatory reason for its actions.
Whistleblower protection, however, is not disbursed or denied en masse. And the Whistleblower Act imposes a rigorous burden on defendants to establish by clear and convincing evidence the legitimate reasons for an adverse action. When Coleman’s complaints are considered individually rather than categorically, a reasonable jury could conclude that one or more of them qualifies as a protected complaint under the Whistleblwer Act. Coleman also came forward with sufficient evidence for a reasonable jury to find a prima facie case of retaliation as to those complaints. The Department, for its part, failed to meet its demanding summary judgment burden of establishing that any reasonable juror would have to find by clear and convincing evidence that it had legitimate, non-retaliatory reasons for its actions.
We therefore reverse the grant of summary judgment as to those aspects of Coleman’s Whistleblower Act claim. With one exception, we affirm the district court’s grant of summary judgment as to Coleman’s other challenges.
I
Statutory Framework
The purpose of the District of Columbia’s Whistleblower Act is “to encourage disclosure of wrongdoing to persons who may be in a position to act to remedy it.” Wilburn v. District of Columbia, 957 A.2d 921, 925 (D.C.2008) (emphasis omitted). The Whistleblower Act thus is designed to combat serious misconduct, abuses of governmental authority, or waste of public resources by creating an environment in which government employees who witness wrongdoing feel safe coming forward and are protected from retaliation. See D.C.Code § 1-615.51; see also id. §§ 2-223.01-2-223.07 (extending similar protections to, inter alia, employees of contractors for the D.C. government).
Sometimes, however, a workplace complaint is just a workplace complaint. To qualify as protected whistleblowing, the complaint must disclose “such serious errors by the agency that a conclusion the agency erred is not debatable among reasonable people.” Wilburn, 957 A.2d at 925; see also Williams v. Johnson, 776 F.3d 865, 870 (D.C.Cir.2015) (same). More specifically, the Act defines “protected disclosures” as those that the would-be whis-tleblower “reasonably believes” evidence:
(A) Gross mismanagement;
(B) Gross misuse or waste of public resources or funds;
(C) Abuse of authority in connection with the administration of a public program or the execution of a public contract;
(D) A violation of a federal, state, or local law, rule, or regulation, or of a term of a contract between the District government and a District government contractor which is not of a merely technical or minimal nature; or
(E) A substantial and specific danger to the public health and safety.
*54 D.C.Code § 1 — 615.52(a)(6); see also Williams, 776 F.3d at 870 (discussing scope of Whistleblower Act protection).
For complaints falling within those categories, the Act bars a supervisor from “tak[ing] or threaten[ing] to take, a prohibited personnel action or otherwise retal-iat[ing] because of the employee’s protected disclosure or because of an employee’s refusal to comply with an illegal order.” D.C.Code § l-615.53(a).
The Act prescribes a distinct burden-shifting framework to govern the proof of whistleblowing claims. See Bowyer v. District of Columbia, No. 13-7012, 793 F.3d 49, 51-52, 2015 WL 4079800, at *2 (D.C.Cir. July 7, 2015). To make out a prima facie claim of retaliation under the Whistleblower Act, the plaintiff must show by a preponderance of the evidence that (i) she made a statutorily protected disclosure, and (ii) the disclosure was a “contributing factor” behind (iii) an adverse personnel action taken by her employer. See Crawford v. District of Columbia, 891 A.2d 216, 219, 221 (D.C.2006). A “contributing factor” is “any factor which, alone or in connection with other factors, tends to affect in any way the outcome of the [employment] decision.” D.C.Code § 1-615.52(a)(2). Once a plaintiff establishes a prima facie case, the burden shifts to the employer to “prove by clear and convincing evidence that the alleged action would have occurred for legitimate, independent reasons even if the employee had not engaged in activities protected by this section.” Id. § l-615.54(b); see also Freeman v. District of Columbia, 60 A.3d 1131, 1141 (D.C.2012).
Factual Background
■ Appellant Vanessa Coleman is a 17-year veteran of the D.C. Fire Department. She began as a cadet after graduating from high school and rose through the ranks to become a captain in command of an engine company.
On March 12, 2008, a large fire broke out in a high-rise apartment building in the Mount Pleasant neighborhood of Washington, D.C. It developed into a five-alarm fire that destroyed the entire structure and left its nearly 200 residents homeless. Coleman headed an engine company that responded to the fire. Battalion Fire Chief John Lee served as the Incident Commander, and directed the operations of firefighters on the scene, including Coleman’s company.
Upon arriving at the fire, Coleman led her company to inspect the basement of the building, as required by the Department’s Standard Operating -Guidelines. Before she could reach the basement, however, Battalion Chief Lee instructed her to proceed directly to the third floor of the building. Coleman abandoned the basement check, following her superior’s command. Coleman did not advise Lee that the basement inspection had not been completed. Nor did Lee confirm its completion with Coleman or anyone else.
The fire proved to be one of the largest in D.C.’s recent history. Failure to complete the basement check proved fatal to the Department’s efforts to control the fire, which had in fact begun in the basement. The fire and the Fire Department’s failure to contain it generated widespread public attention and criticism.
In the following days, the Department conducted an informal internal critique of the Mount Pleasant fire that included an inquiry into Coleman’s actions. In response, Coleman sent memoranda to her superiors explaining her actions, and advocating that a formal review of the Mount Pleasant fire be undertaken to investigate all of the departmental failures that day.
*55 On April 5, 2008, Battalion Chief John Lee issued Coleman a citation for violating the Standard Operating Guidelines and the District of Columbia Fire and Emergency Medical Services Department Order Book “by (1) not reporting-her basement findings to Command; or (2) if unable to perform this assignment as so ordered by Command, immediately notifying] Command of this fact.” J.A. 150. Coleman refused to accept a settlement penalty, and instead exercised her right to challenge the charge.
On April 21, 2008, Coleman wrote a memorandum to Fire Chief Dennis Rubin explaining that she was challenging the charge “because the violation referenced was not an omission of neglect on [her] behalf. Instead, the error resulted from the tactical decision of the IC [Incident Commander John Lee].” J.A. 215. In Coleman’s view, “the execution of the basement check wasn’t completed by [her company] because the IC (deviating from standard protocol) ordered [her company] to a greater assignment of priority.” Id. This, Coleman asserted, evidenced a failure to properly manage fire operations and to contain a large, multi-alarm fire. She also repeated her recommendation that the Department conduct a thorough and formal review of command failures at the Mount Pleasant fire.
Four days later, on April 25, Battalion Chief John Lee was cited for failing to follow up with Coleman’s company regarding a basement report. Unlike Coleman, however, Lee decided not to challenge the citation, and accepted an official reprimand.
In May 2008, while Coleman awaited her hearing, she wrote another memorandum to Chief Rubin, this time complaining that, since April, her superiors had been failing to endorse and timely process disciplinary actions she initiated against her subordinates. When she received no response from Chief Rubin, she continued over the next two months- to submit almost a dozen memoranda to the Chief complaining that, among other things, her superiors were collectively and intentionally ignoring her requests for disciplinary support, misusing their authority to “cripple” her professional career, and orchestrating a “mutiny” against her by subverting her efforts to discipline those in her command. J.A. 246, 267. Coleman also sent multiple communications to Assistant Fire Chief Brian Lee expressing concern that her disciplinary notices were not being timely processed.
On May 19, 2008, Battalion Fire Chief James Kane heard Coleman’s appeal of her April 5th citation. He found her guilty of the infraction, and recommended that she be suspended for 24 duty hours. Assistant Chief Brian Lee approved the recommendation.
On July 23, 2008, Coleman appealed her suspension to Chief Rubin. In doing so, she filed a memorandum that not only defended her own actions at the Mount Pleasant fire, but also provided a detailed account of what she believed were major command failures and dangerous practices by the Department at the fire site. They included (i) failing to ensure that each floor was checked and instead channeling resources to the second floor in a mistaken belief that the fire originated there, (ii) neglecting to request adequate resources at the outset, (iii) untimely activating a second alarm to increase fire-fighting resources, and (iv) requiring firefighters to work in exceptionally dangerous conditions even though experts knew early on that the building could not be saved. Coleman explained that those failures both caused the loss of the building and unnecessarily put firefighters at “extreme risk.” J.A. 297.
*56 While Assistant Chief Brian Lee had previously contemplated the possibility of subjecting Coleman to a .fitness examination, within 48 hours of receiving the July 23rd memorandum, he pulled the trigger and ordered that Coleman immediately undergo an evaluation of her psychological fitness for duty. He grounded his order in “her constant and sometimes alarming emails and reports about possible conspiracy in the work place; and her inability to adhere to directives given by myself and other Superior officers,” concluding that the Department needed to “determine if there is a medical cause for this behavior.” J.A. 306.
On July 28, 2008, Chief Rubin affirmed the May 19th administrative decision suspending Coleman for her performance at the Mount Pleasant fire. Three days later, Coleman reported for the fitness-for-duty evaluation as ordered, but refused to sign the requisite consent form because it required her to attest that her participation was voluntary. She was concerned about waiving challenges to the test results and releasing her medical records. That same day, she submitted a memorandum to Chief Rubin stating that she believed she was being ordered to take the psychological examination in retaliation for “whistle blowing” and that she “was uncomfortable consenting to the waiver form without first acquiring legal guidance.” J.A. 327. The Department responded by charging Coleman with insubordination.
Coleman informed the Department that she would not complete the fitness-for-duty examination unless certain changes were made to the waiver form so that she could record that she was submitting to the evaluation “under duress and under the threat of further retaliation or adverse personnel action.” J.A. 81. At that point, the Department put the examination and insubordination charge on hold pending the outcome of an equal employment investigation into her charges. Once that investigation concluded with no action, the Department reinstated the order that Coleman undergo the fitness evaluation. Coleman, however, continued to refuse to consent to the testing. On January 13, 2009, the Department formally commenced insubordination proceedings against her.
The Department’s Trial Board found Coleman guilty of two counts of insubordination. The Board recommended that she receive a demotion of two ranks and be ordered again to submit to the fitness-for-duty examination. Chief Rubin agreed.
Coleman again refused to give her voluntary consent to the examination, despite a .warning that it could lead to her termination. The Department terminated Coleman on October 7, 2009.
Procedural History
Coleman subsequently filed suit in the United States District Court for the District of Columbia alleging violations of the Whistleblower Act, along with other state and federal causes of action.[1] Coleman named as defendants the Department, Chief Rubin in his official capacity, and Assistant Chief Brian Lee in his individual capacity (collectively, “Department”). Coleman alleged that her memoranda and other communications were statutorily protected disclosures to Department management exposing abuse of authority, gross mismanagement, violations of federal and local laws, violations of Department rules, and substantial and specific dangers to public health and safety. She further *57 alleged that she was unlawfully retaliated against as a result of those protected disclosures through reprimands, suspensions, orders to submit to the fitness-for-duty evaluation, and eventually termination.
The district court granted summary judgment for the Department and dismissed Coleman’s complaint. Grouping Coleman’s communications into seven broad categories (such as all “internal [in-tra-Department] communications regarding the Mount Pleasant fire”), the court concluded that only three categories of communications were even arguably protected by the Whistleblower Act. Coleman v. District of Columbia, 893 F.Supp.2d 84, 93, 101 (D.D.C.2012). Those three categories covered Coleman’s internal and external communications and legal filings alleging race and sex discrimination in the Department, and thus could be protected allegations revealing violations of. federal and local law. Coleman’s communications regarding the Mount Pleasant fire, however, were categorically dismissed as pertaining only to an internal disciplinary matter. Id. at 101-102.
With respect to the communications that the district court found were generally protected, the court held that, even assuming they were a substantial factor in sanctioning Coleman, the Department had an independent and legitimate reason for taking those actions. Coleman, 893 F.Supp.2d. at 102. In so ruling, the court relied on certain justifications for the Department’s actions that the court deemed to have been “impliedly offered” by the Department. Id. at 103. The court also relied on Coleman’s acknowledgement that the challenged actions were taken in response to communications that the district court had said were categorically unprotected. Id. at 104. Because it had ruled that ordering the fitness-for-duty evaluation was not retaliatory, the district court also held that the Department’s sanctions for Coleman’s non-compliance with that order, including ultimately termination, were not retaliatory either. See id. at 105.
Finally, the court granted summary judgment on Coleman’s First Amendment claim against Assistant Chief Lee, see Coleman, 893 F.Supp.2d at 94-99, as well as her retaliation and hostile work environment claims under Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000 et seq., and the District of Columbia’s Human Rights Act, D.C.Code §§ 2-1401 et seq. See Coleman, 893 F.Supp.2d at 105-109. Coleman does not challenge those rulings on appeal.[2]
II
Analysis
We review the district court’s grant of summary judgment de novo, drawing all reasonable inferences from the evidence in favor of the nonmoving party. See Payne v. District of Columbia, 722 F.3d 345, 351 (D.C.Cir.2013). Summary judgment may only be granted when there is no genuine dispute as to any material fact, and the moving party — in this case, the Department — is entitled to judgment as a matter of law under the governing legal standard. Id.
Under the Whistleblower Act, once a prima facie case has been established, the defendant must prove by clear and convincing evidence that it had a legitimate, non-retaliatory reason for any adverse employment actions that were taken in the *58 wake of a protected disclosure. D.C.Code § l-615.54(b); see also Bowyer, 2015 WL 4079800, at *2. Accordingly, in reviewing the grant of summary judgment to the Department, we must “view the evidence presented through the prism of th[at]” clear and convincing “substantive eviden-tiary burden,” Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); see id. (“Whether a jury could reasonably find for either party * * * cannot be defined except by the criteria governing what evidence would enable the jury to find for either the plaintiff or the defendant.”).
In reviewing a claim under the Whistleblower Act, this court applies the substantive law of the District of Columbia and “[o]ur duty * * * is to achieve the same outcome we believe would result if the District of Columbia Court of Appeals considered the case.” Payne, 722 F.3d at 353.

Protected Disclosure

At the summary judgment stage, the central question is whether a “reasonable juror ‘with knowledge of the essential facts known to and readily ascertainable by the employee’ ” could find that one or more of Coleman’s memoranda disclosed an “objectively serious” governmental act of gross mismanagement, gross misuse or waste of public funds, abuse of authority, a material violation of local or federal law, or a substantial and specific danger to public health and safety. Williams, 776 F.3d at 871-872.[3] Whether the employee made a protected disclosure is often “a ‘fact specific inquiry.’ ” Williams, 776 F.3d at 870 (quoting Shekoyan v. Sibley Int’l, 409 F.3d 414, 423 (D.C.Cir.2005)).
Applying that standard, a reasonable jury could find that Coleman’s July 23rd memorandum cataloging serious and potentially life-endangering problems with the Department’s response to the Mount Pleasant fire was a protected disclosure. That memorandum contained a detailed account of the multiple departmental command failures Coleman observed at the Mount Pleasant fire, which was one of the most devastating fires in recent Department history and which had generated public scrutiny and criticism of departmental operations. Coleman pointed with specificity to how inaccurate reports about conditions inside the burning building impeded firefighters’ ability to pinpoint the location of the fire, which is critical to containing a fire. She also described the Department’s lack of attention to established firefighting procedures, such as failing to check each floor as firefighters ascended, and to the misdirection of resources, citing in particular an order diverting units to the second and third floors. Coleman’s memorandum went on to explain that there were insufficient firefighters on the scene to extinguish what ended up being a five-alarm fire or to contain its spread. As a consequence, the firefighters on the scene suffered from “fatigue and mental exhaustion.” J.A. 297. She also alleged that alarms calling in additional units to help fight the fire were unjustifiably delayed. Lastly, Coleman states that “on scene experts knew some 10 minutes into the fire that the building wouldn’t be saved” and that, in spite of this knowledge, “interior [firefighting] crews were put at extreme risk.” Id.
A reasonable jury could conclude that the July 23rd memorandum disclosed either gross mismanagement or a “substan *59 tial and specific danger to the public health and safety,” topics specifically protected by the Whistleblower Act. D.C.Code § 1-615.52(a)(6)(A) & (E). If true (a matter on which we express no opinion), the statements would reveal serious and potentially life- and property-endangering errors by the D.C. Fire Department in managing the blaze. The memorandum is detailed and specific; it is not a general undifferentiated complaint that contributes little to the disclosure of actual governmental misconduct. The concerns raised, moreover, bore directly on a matter of significant public concern — the much-scrutinized Mount Pleasant fire.
The disclosures thus go far beyond a mere difference of opinion among employees or self-interested finger-pointing by Coleman. Instead, if true, they would reveal official missteps that stand separate and apart from Coleman’s individualized personnel dispute over responsibility for checking the basement.
In granting summary judgment to the defendants, the district court grouped all of Coleman’s “internal [intra-Department] communications regarding the Mount Pleasant fire” together and declared that entire category to be unprotected because Coleman’s concern was to preserve her “own career” and to fend off the Department’s “erroneous citation of [hér] for a professional error.” Coleman, 893 F.Supp.2d at 101.
The question, however, is whether a reasonable jury could find that any, not all, of Coleman’s internal complaints were protected. And that inquiry turns on. whether an individual disclosure might “reasonably” be viewed as revealing “objectively serious” misconduct. Williams, 776 F.3d at 871-872. The whistleblower’s subjective motivation is beside the point. See id. Indeed, there is nothing inherently contradictory about disclosing serious misconduct while also defending one’s own professional reputation. The proper focus thus is on the objective content of the information revealed, not the motives of the revealer. Cf. Horton v. Department of Navy, 66 F.3d 279, 282-283 (Fed.Cir.1995) (discussing Congress’s rejection of employee motive as a factor in determining whether a disclosure is protected under the federal whistleblower law); see also Freeman, 60 A.3d at 1141 (“In construing the [Whistleblower Act], we have found it helpful to consider how its federal counterpart, 5 U.S.C. § 2302(b)(8)(B) (2008), and similar state whistleblower laws have been interpreted.”).
Finally, the Department’s objection (Br. 28) that aspects of the disclosure were “rumor” or “too vague and unsupported to be a protected disclosure” simply ignores the specific content and details laid out in the July 23rd memorandum. The argument also overlooks that Coleman was a 17-year veteran of the D.C. Fire Department, who had earned her way up to the level of Captain. She thus had first-hand experience fighting fires in the District, and was familiar with the Department’s command and containment protocols. Her “expertise in these matters supports the reasonableness of her belief’ that the Department’s actions posed a substantial threat to public safety. Or at least a reasonable jury could so find. Chambers v. Department of the Interior, 602 F.3d 1370, 1379 (Fed.Cir.2010).
While it presents a closer question, a reasonable jury could also find that Coleman’s April 21st memorandum to Chief Rubin was a protected disclosure because it disclosed that Battalion Chief John Lee had reassigned Coleman’s company before the basement check had been completed. Coleman’s memorandum did not simply assert her blamelessness in the missed basement check, but instead went further and *60 disclosed that Lee independently had failed to follow up on and confirm that the basement check had been completed. Given how critical that check was to the fire’s containment, a reasonable jury could find that Lee’s oversight created a significant safety risk. Indeed, four days after Coleman’s memorandum, the Department cited Lee for the very conduct that Coleman had described.
Coleman also claims on appeal that an April 1st memorandum expressing her concern over the Department’s decision to conduct only an informal, rather than formal, investigation of the Mount Pleasant fire was protected. We disagree. No reasonable jury could find that the decision whether to proceed at least initially through an informal rather than a formal investigatory process is the kind of serious error that is “not debatable among reasonable people.” White v. Department of Air Force, 391 F.3d 1377, 1383 (Fed.Cir.2004). The April 1st memorandum also lacks the detail and specificity needed to link the complaints to public safety. See Chambers, 602 F.3d at 1376 (disclosure “revealed] a substantial and specific danger to public health and safety” because there were “specific allegations or evidence either of actual past harm or of detailed circumstances giving rise to a likelihood of impending harm”).
Finally, we decline to consider whether Coleman’s July 31st memorandum to Chief Rubin explaining why she refused to submit to the fitness-for-duty examination is a protected disclosure. Coleman made no effort in her opening brief to link this disclosure, which postdated the evaluation order, to further acts of retaliation. If she meant instead to wrap this disclosure in a broader claim that she was retaliated against for refusing to comply with an unlawful order, that theory was forfeited on appeal because it was presented only in her reply brief. See Novak v. Capital Mgmt. & Development Corp., 570 F.3d 305, 316 n. 5 (D.C.Cir.2009).

Retaliation

Identifying a protected communication was only half of Coleman’s summary-judgment task. That is because blowing the whistle does no't immunize employees from any and all employment actions; it only protects against those adverse employment actions for which the employee’s disclosure or attempted disclosure was “essentially * * * a ‘but for’ ” cause. Johnson v. District of Columbia, 935 A.2d 1113, 1119 (D.C.2007). The Whistleblower Act spells out specifically how that causation standard is to be met. First, Coleman had to come forward at summary judgment with sufficient evidence from which a reasonable jury could conclude both that her communication was protected and that her whistleblowing was a contributing factor to a “prohibited personnel action,” D.C.Code § l-615.54(b). See Payne, 722 F.3d at 353; see also Freeman, 60 A.3d at 1141.
Once Coleman met that burden, the Whistleblower Act required the government to show that there was no disputed question of fact that the challenged action would have occurred for legitimate reasons independent of Coleman’s protected disclosure. More specifically, the government had to prove that any reasonable juror would have to find that the government had proven the legitimacy of its action by “clear and convincing evidence,” D.C.Code § 1—615.54(b). See Freeman, 60 A.3d at 1141; see also Bowyer, 2015 WL 4079800, at *2.
At the outset, the Department does not dispute that the ordered fitness-for-duty examination, citation, suspension, and ultimate discharge of Coleman constitute the types of adverse employment actions that *61 implicate the Whistleblower Act’s protections. See D.C.Code § l-615.52(a)(5)(A) (defining prohibited personnel action as including “recommended, threatened, or actual termination, demotion, suspension, or reprimand; * * * referral for psychiatric or psychological counseling; * * * or retaliating in any other manner”); see also Freeman, 60 A.3d at 1141.
In concluding that the Department had met its burden of justifying its employment actions, the district court committed two legal errors. It implied justifications the Department had not advanced, and it failed to enforce the Whis-tleblower Act’s stringent burden of proof on the Department.
1. In identifying the Department’s non-retaliatory basis for disciplining and discharging Coleman, the district court relied in part not on reasons given by the Department, but instead on those the court divined itself, and then deemed to have been “impliedly offered.” Coleman, 893 F.Supp.2d at 103. Proof in point: the district court stated that “defendants have not specifically alleged an independent justification for [reprimanding plaintiff] in their motion for summary judgment”; instead, the court gleaned “possible justification[s]” from the record. Id. at 104; see also id. (stating that Coleman’s “pleading has inadvertently assisted her opponents in constructing a justification for actions”). That a trial court may not do.
In answering a plaintiffs prima fade case, the burden is on the employer-defendant to come forward with its actual non-retaliatory justification for its employment decision. The text of the Whistleblower Act itself requires that “the defendant” rebut a showing of unlawful retaliation with proof that the challenged employment action “would have” — not could have — “occurred for legitimate, independent reasons” regardless of the allegedly protected activities. D.C.Code § 1 — 615.54(b). A trial court may not do the defendant’s summary-judgment work for it.
Precedent in analogous contexts confirms that the text of the Whistleblower Act means what it says. The Supreme Court has repeatedly held for federal employment laws — where a defendant’s burden is generally only one of production, rather than the Whistleblower Act’s duty of clear and convincing persuasion — that the defendant must “clearly set forth, through the introduction of admissible evidence, the reasons for” its adverse employment actions. Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 255, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); see also St. Mary’s Honor Center v. Hicks, 509 U.S. 502, 509-510, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (defendant must respond with “evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action”); cf. McKennon v. Nashville Banner Publishing Co., 513 U.S. 352, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995) (holding that, where an employer’s actual motive for an employee’s termination was unlawfully discriminatory, the post hoc advancement of reasons that could have led to termination does not avoid liability).
Beyond that, to hypothesize why a defendant could have taken an employment action is to ask the wrong question. The point of the Whistleblower Act’s anti-retaliation provision is to make clear to employers that they cannot use their power to punish employees for whistleblowing or to cow them into silence. See D.C.Code § 1-615.51. Asking whether a misbehaving employer could have taken the same employment action for a legitimate reason, rather than whether the employer did so, would enfeeble the Act’s most basic protection for employees and would open the door to after-the-fact justifications for employment *62 actions that were, in fact, designedly retaliatory. That is not how causal analysis works in the analogous employment-discrimination context, and there is no textual or precedential reason to think the D.C. Council wanted a peculiarly anemic version of burden-shifting in the whistleblower context. ,
2. The district court also failed to analyze the Department’s summary-judgment evidence under the exacting “clear and convincing” standard of proof that the Whistleblower Act imposes, D.C.Code § 1—615.54(b). See McCormick v. District of Columbia, 752 F.3d 980, 986 (D.C.Cir.2014) (summary judgment on causation prong appropriate where the “only evidence” on this point supported the “independent lawful reasons” for termination offered by the defendant); see also Liberty Lobby, 477 U.S. at 254, 106 S.Ct. 2505 (summary judgment must factor in “the criteria governing what evidence would enable the jury to find for either the plaintiff or the defendant”).
More specifically, while the district court announced the correct standard, it failed to recognize that, under the Whis-tleblower Act, the burden of persuasion remains on the defendant even once a legitimate and independent rationale for an action has been articulated. Compare Freeman, 60 A.3d at 1141 (defendant’s burden under Whistleblower Act is to “prove by clear and convincing evidence that the alleged action would have occurred for legitimate independent reasons” absent the protected conduct) (emphases added) (quoting D.C.Code § l-615.54(b)), and Bowyer, 2015 WL 4079800, at *2 (same), with St. Mary’s Honor Center, 509 U.S. at 509, 113 S.Ct. 2742 (defendant’s analogous burden Title VII is simply to “producfej evidence (whether ultimately persuasive or not) of nondiscriminatory reasons”) (first emphasis added).[4]
When the record is analyzed through the proper summary-judgment lens, a reasonable jury could conclude that (i) Coleman established a prima facie case of retaliation with respect to her referral for a fitness evaluation, and (ii) the Department failed to establish by clear and convincing evidence that it would have taken the challenged actions for legitimate, non-retaliatory reasons even in the absence of the protected conduct.
To begin with, Assistant Chief Lee openly rested his direction that Coleman undergo a fitness evaluation on her filing of numerous complaints with superiors, which included her April 21st and July 23rd communications detailing serious problems at the Mount Pleasant fire. Assistant Chief Lee specifically said that his decision was based in part on Coleman’s “constant and sometimes alarming e-mails and reports about possible conspiracy in the work place,” which he deemed “disruptive to * * * the efficient management of the Department.” J.Á. 306.
In addition, the close temporal proximity between the July 23rd memorandum in particular and the July 25th order that Coleman undergo a fitness examination supports an inference of causation. See Payne, 722 F.3d at 354 (close temporal proximity “can provide circumstantial evi *63 dence of causation”); Freeman, 60 A.3d at 1145 (proximity may “lend support to an inference of a causal relationship”).[5]
Coleman also came forward with affirmative evidence that countered the Department’s proffered rationale for ordering the examination — that her repeated memo-randa suggested she was unbalanced. Coleman put into the record a declaration by a psychologist with significant experience in conducting fitness-for-duty examinations for the District’s Police and Fire Clinic. After evaluating Coleman and reviewing the communications at issue and the testimony and affidavits of the relevant officials and medical personnel in the Department, Dr. Mitchell Hugonnet concluded that there was “little to no logical, psychological or medical basis to order Capt. Coleman to submit to a fitness for duty * * * psychological evaluation.” J.A. 579. Coleman also submitted an affidavit from a subordinate working in her Company at the time of the relevant events who attested to her fitness for duty, stating: “I never witnessed any erratic or disturbing behavior from Capt. Coleman. * * * [0]n the occasions that I have had to communicate with Capt. Coleman, I have observed no changes in her behavior, or witnessed conduct that would give DC Fire & EMS reason to question her physical or psychological abilities as an officer.” J.A. 557.
The Department cherry picks a few words and phrases out of Coleman’s mem-oranda and labels them “paranoid” and “disturbing,” reasoning that such wording provided a legitimate basis for mandating the examination. Department Br. 11-12. Language, however, must always be read in context. And when the memoranda are read as a whole, there is no basis for holding that — as a matter of law — Coleman’s occasional word choices so entirely devalued or discredited her substantive and detailed criticisms about fire management in the April 21st and July 23rd mem-oranda as to warrant summary judgment. While a jury could credit the Department’s explanation, a jury could just as reasonably agree with Dr. Hugonnet’s judgment that the memoranda “do not raise any psychological or emotional issues that would justify a psychological evaluation,” as her “thoughts are cogent, well organized and follow logical themes.” J.A. 579-580.
A reasonable jury could likewise agree with the Doctor that, “[wjhile a few of the words that Capt. Coleman uses are emotionally charged, such as the word ‘mutiny!,’] these terms are not necessarily indicative of any emotional or psychological dysfunction,” but rather are “likely indicative of frustration in not getting closure on issues that Capt. Coleman felt were important to the efficiency of the Department’s operations.” J.A. 580.[6]
To the extent, then, that the validity of the Department’s rationale turns on whether its explanation is credited over that of Coleman’s expert, that credibility judgment or “weighing the evidence” is for a jury to make, not a court at summary judgment. Jones v. Bernanke, 557 F.3d 670, 681 (D.C.Cir.2009); see id. (“[A]t this stage we refrain from making credibility *64 determinations, weighing the evidence, or drawing inferences from the evidence— these, after all are jury functions, not those of a judge ruling on a motion for summary judgment.”) (internal quotation marks omitted); see also George v. Leavitt, 407 F.3d 405, 413-414 (D.C.Cir.2005) (plaintiff proffered sufficient evidence from which a jury could find that the employer’s stated reasons for terminating plaintiff were pretextual, not “undisputed”). Given all of those issues of disputed fact, Coleman’s claim that the evaluation order was retaliatory survives the Department’s motion for summary judgment.[7]
Finally, Coleman argues on appeal that her April 5th citation and subsequent 24-hour suspension, as well as a June 5th citation for failing to enforce a grooming policy were retaliatory as well.
The April 5th citation, however, predates all of the protected disclosures that Coleman highlights on appeal, and consequently could not have been caused by them. And the suspension followed the Department’s determination, after an evi-dentiary hearing, that Coleman did in fact make a mistake at the fire ground when she failed to provide a basement report. Although Coleman challenges that administrative determination on appeal, the individually focused factual question of whether Coleman actually made a mistake at the fire site is a “wholly different” inquiry “from whether [the Department cited her] because its investigation found that [s]he had.” McCormick, 752 F.3d at 986. The latter is a question of permissible employer motivation that this court can review; the former is not.
Beyond that, Coleman presented no evidence that Battalion Chief Kane, who presided over the hearing and issued the suspension, had any knowledge of any protected disclosure. Without evidence, circumstantial or otherwise, that “the decision-maker[] responsible for the adverse action had actual knowledge of the protected activity,” Coleman has failed to create a disputed fact question about whether the decision was retaliatory. McFarland v. George Washington University, 935 A.2d 337, 357 (D.C.2007); accord Talavera v. Shah, 638 F.3d 303, 313 (D.C.Cir.2011). Coleman thus failed to make out even a prima facie case with respect to that incident.[8]
As for the June 5th citation, the district court deemed it justified based on two rationales, neither of which the Department itself proffered. That will not do. *65 The Department, moreover, did not supply on appeal any alternative basis for affirming that decision. We consequently vacate the grant of summary judgment as to the June 5th citation. The reserved question of whether that claim was forfeited by Coleman through her discovery responses remains open on remand. See Coleman, 893 F.Supp.2d at 104.
In closing, we note that the dissenting opinion spills a lot of ink assembling summary judgment arguments that the Department never pressed and on which the district court did not rely. We do not dispute that a reasonable jury could credit the evidence and draw the inferences on which the dissenting opinion relies. Maybe the dissent is even correct that, were we to weigh the evidence ourselves and draw inferences in favor of the defendants, the Department might have the better of the argument.
But that is not how summary judgment is supposed to work. This court is duty bound at this procedural juncture “to view the facts in the light most favorable to the nonmoving party,” and to draw all reasonable inferences in support of Coleman— not the Department — while holding the Department to its exacting burden of proof and the strategic judgments it chose to make. Lash v. Lemke, 786 F.3d 1, 6 (D.C.Cir.2015) (internal quotation marks omitted); see also, e.g., Tolan v. Cotton, — U.S. -, 134 S.Ct. 1861, 1863, 188 L.Ed.2d 895 (2014) (per curiam) (vacating court of appeals’ judgment for disregarding “the axiom that in ruling on a motion for summary judgment, the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor”) (internal quotation marks and brackets omitted).
In particular, whether or not the Department could have argued that Coleman’s history of “conflict, dissension, and disobedience,” Dissenting Op. at 71, underlay the referral for a fitness evaluation, it is both telling — and procedurally disposi-tive — that the Department did not make that argument in any non-conclusory fashion on appeal, and only referenced it in passing before the district court as well. See Defs.’ Br 38 — 40; Defs.’ Mot. for Summ. J. at 13, 25-28, 36-37, Coleman v. District of Columbia, No. 1:09-cv-50 (RCL) (Aug. 8, 2012), ECF No. 131. Thus if, as the dissent suggests, Dr. Hugonnet did not address Coleman’s history in detail, then he had company. More to the point, because the court’s duty at summary judgment is to afford the plaintiff all reasonable inferences from the record, “[i]t is not” and should not be “enough merely to mention a possible argument in the most skeletal way” in one sentence on the fortieth'page of a brief, and then “leav[e] the court” — or the dissenting opinion — “to do counsel’s work.” Bryant v. Gates, 532 F.3d 888, 898 (D.C.Cir.2008) (internal quotation marks omitted).
Likewise, while the Department perhaps could have argued that Lee had a mistaken but reasonable and honestly held belief that Coleman’s emails and actions warranted the fitness evaluation, see Dissenting Op. at 71, it did not do so. Unlike the dissenting opinion, we do not believe it is appropriate for this court to save a summary-judgment movant from the consequences of “its own muddled litigation strategy.” Potter v. District of Columbia, 558 F.3d 542, 552 (D.C.Cir.2009) (Williams, J., concurring); see also George, 407 F.3d at 415^16 (declining to affirm summary judgment on an essentially identical “theory” that the government “did not rely on * * * before us”).[9]
*66 The dissent grounds its contrary conclusion in case law that did not involve the far more exacting clear-and-convincing standard of proof that the defendants bear here. See Dissenting Op. at 70; see also Aka v. Washington Hospital Center, 156 F.3d 1284, 1289 (D.C.Cir.1998) (noting employer’s burden of production; not persuasion, under federal burden-shifting framework). The dissenting opinion’s reliance (at 8) on Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000), is even more baffling, since Reeves says only that “abundant and uncontroverted independent evidence” may be sufficient to obtain summary judgment when the defendant does not bear any burden of proof at all, id. at 148, 120 S.Ct. 2097 (emphasis added).[10]
Here, on what the dissenting opinion deems the key question — “whether Lee honestly thought an exam was warranted” because of Coleman’s history of dissension and complaints (Dissenting Op. at 72) — the evidence is controverted by (i) the Department’s admission that Coleman’s communications played a role in the referral, (ii) Coleman’s expert, (iii) the testimony of her colleague, and (iv) the thus far uncontro-verted fact that the only intervening event between Lee’s wondering about a referral and his decision to order it was Coleman’s protected disclosure on July 23rd. ■ Keeping in mind the Department’s exceptional burden under the Whistleblower Act, we hold only that when all reasonable inferences in this record are drawn in favor of Coleman, the record does not compel as a matter of law the conclusion either (i) that Coleman’s protected complaints about fire management did not “tend[] to affect in any way” the Department’s decision to refer her for a fitness for duty examination, D.C.Code § l-615.52(a)(2), or (ii) that the Department proved by clear and convincing evidence that the decision would have occurred for “legitimate, independent reasons” even if Coleman had not made the protected complaints, id. § 1 — 615.52(b).
Ill
Conclusion
. A reasonable jury could conclude based on the summary judgment record that- one or more of Coleman’s individual complaints qualifies as protected under the Whistle-blower Act, that Coleman established a prima facie case of retaliation as to those complaints, and that the Department failed to rebut that prima facie case with clear and convincing evidence of a legitimate, non-retaliatory reason for its actions. Accordingly, we reverse the grant of summary judgment in favor of the Department as to those aspects of Coleman’s Whistle-blower Act claim, as well as to the June 5th citation. We remand for the determination whether and to what extent the Department may be held liable for subsequent adverse personnel decisions stemming from Coleman’s refusal to submit to the fitness-for-duty examination, and for further proceedings consistent with this opinion. We affirm the district court’s grant of summary judgment on Coleman’s Whistleblower Act claim as it relates to *67 her April 5th citation and May 31st sus- ' pension.

So ordered.

. The federal claims gave rise to federal question jurisdiction, as well as supplemental jurisdiction over Coleman's Whistleblower Act and other related state-law claims. See 28 U.S.C. §§ 1331, 1367.

. The district court had dismissed Coleman's other constitutional and common law claims in a December 7, 2011 order granting the Department partial judgment on the pleadings. See Coleman v. District of Columbia, 828 F.Supp.2d 87, 90-97 (D.D.C.2011). Coleman has not presented any objection to that ruling on appeal.

. See also Wilburn, 957 A.2d at 925; Zirkle v. District of Columbia, 830 A.2d 1250, 1259-1260 (D.C.2003); D.C.Code § 1-615.52(a)(6)(A)-(E).

. In that regard, the dissenting opinion is mistaken in suggesting (Dissenting Op. at 68-69) that the existence of a prima facie case becomes largely irrelevant at the summary judgment stage once the defendant asserts a legitimate, non-retaliatory reason for the adverse action. Under the plain text of the Whistleblower Act, D.C.Code § 1-615.54(b), Coleman’s establishment of a prima facie case permanently shifted to the Department the burden of persuasion—by clear and convincing evidence, no less—that the challenged decision was not retaliatory. See Bowyer, 2015 WL 4079800, at *2, *4. .

. Other evidence indicates that Assistant Chief Brian Lee at least contemplated having Coleman undergo a fitness-for-duty examination a week before her July 23rd memorandum. But it was within 48 hours of that protected memorandum that Lee chose to order the exam.

. Because Dr. Hugonnet's assessment was based on the same set of communications and actions that Lee cited as the impetus for his order in the first place, the dissenting opinion is incorrect to suggest that the timing of the assessment would as a matter of law preclude a jury from crediting it. See Dissenting Op. at 71-72.

. Her claim may also survive with respect to any subsequent prohibited personnel actions that can be causally linked to the evaluation order and the protected disclosures that Coleman claims prompted it. The district court rested its holding that these subsequent actions could not be shown to be retaliatory on its conclusion that that order itself was not retaliatory, see Coleman, 893 F.Supp.2d at 105. Having overturned that summary judgment determination, we leave open on remand the question of whether the Department may be held liable for subsequent adverse personnel decisions stemming from Coleman’s refusal to submit to the fitness-for-duty examination.

. The D.C. Court of Appeals has 'subsequently noted (without deciding) that its' holding in McFarland, could be limited if an employee established causation based on a so-called “cat’s paw” theory of liability. See Bryant v. District of Columbia, 102 A.3d 264, 268 n. 3 (D.C.2014); see also Staub v. Proctor Hosp., 562 U.S. 411, 131 S.Ct 1186, 1191-1194, 179 L.Ed.2d 144 (2011) (recognizing that liability could be found under Title VII where the ultimate decisionmaker was not motivated by discriminatory animus, but a lower-level supervisor was and proximately caused the challenged employment action). Coleman has made no attempt to proceed on such a theory here or otherwise to suggest that McFarland’s actual-knowledge requirement is not applicable.

. The dissenting opinion’s worry about the policy implications of the decision also steps *66 out of bounds. Whether the Whistleblower Act should be applied to public safety agencies is a policy call for the legislature. Our duty is to apply the statute as written and to hew to precedent.

. This case stands in sharp contrast to Johnson where the plaintiffs provided "no evidence” that the defendant’s proffered rationale was pretextual. See 935 A.2d at 1122; see also Bowyer, 2015 WL 4079800, at *5 (summary judgment appropriate where plaintiffs made no effort to show that the asserted reason for adverse action was pretextual).