# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued September 22, 2014        Decided January 16, 2015

No. 12-7074

CHRISTINA CONYERS WILLIAMS,
APPELLEE

v.

ROBERT JOHNSON, INDIVIDUALLY AND AS SENIOR DEPUTY
DIRECTOR, ADDICTION PREVENTION AND RECOVERY
ADMINISTRATION, DISTRICT OF COLUMBIA DEPARTMENT OF
HEALTH, ET AL.,
APPELLANTS

TORI WHITNEY AND DAVID A. CATANIA,
INTERVENORS

---

Consolidated with 12-7081

---

Appeals from the United States District Court
for the District of Columbia
(No. 1:06-cv-02076)

---

*Holly M. Johnson*, Assistant Attorney General, Office of the Attorney General for the District of Columbia, argued the cause for appellants. With her on the briefs were *Irvin B. Nathan*, Attorney General, *Todd S. Kim*, Solicitor General, and *Donna M. Murasky*, Deputy Solicitor General, at the time the briefs were filed. *Loren L. AliKhan*, Deputy Solicitor General, and *Sarah L. Knapp*, Assistant Attorney General, entered appearances.

*V. David Zvenyach* argued the cause for intervenor David Catania. With him on the brief was *John Hoellen.*

*John F. Karl Jr.* argued the cause for appellee/cross-appellant. With him on the briefs was *Kristen Grim Hughes*. *Brian K. Flowers* entered an appearance.

*Les Alderman* and *Alan R. Kabat* were on the brief for *amicus curiae* Metropolitan Washington Employment Lawyers Association in support of appellee/cross-appellant.

Before: KAVANAUGH, *Circuit Judge*, and EDWARDS and GINSBURG, *Senior Circuit Judges*.

Opinion for the Court filed by *Senior Circuit Judge* GINSBURG.

GINSBURG, *Senior Circuit Judge*: When Christina Conyers Williams, an employee in the D.C. Department of Health, Addiction Prevention and Recovery Administration (APRA), testified before the D.C. Council, she revealed that her department's new software program to keep track of client data was not currently useful and that its roll out was behind schedule. She knowingly contradicted the overly optimistic answers her supervisors had submitted to the Council in advance of the hearing. Immediately following this incident

and for some months thereafter, Williams was harassed by her supervisors, causing her to sue the District of Columbia for retaliation under the D.C. Whistleblower Protection Act (WPA)[*] and, eventually, to resign. At trial, the jury saw a video of the 2006 Council meeting and heard evidence about the way Williams's supervisors treated her afterward. They returned a verdict finding that Williams's Council testimony exposed information serious enough to warrant protection under the WPA and awarded her $300,000 in damages, in part for the salary cut she took when she resigned her position with APRA and took a new position with the federal government.

The District asks us to overturn the jury's verdict, arguing both that Williams's disclosures are not serious enough to warrant protection under the WPA and that the evidence does not support a finding that her working conditions were so oppressive as to give her no choice but to resign. The District additionally argues Williams's claim for back and front pay is barred because she failed to give the District timely notice that she would argue her resignation was a constructive discharge, which notice was required by statute when she resigned but not when she amended her complaint to include claims for back and front pay.

We conclude the jury's verdict finds adequate support in the record and we affirm the district court's holding that the notice provision is a procedural requirement that, having been made inapplicable to the WPA, does not limit the claims a plaintiff may bring against the District under that statute,

---

[*] Williams additionally made claims under the First Amendment, which claims gave the district court supplemental jurisdiction over her D.C. law claims. The district court has since dismissed her constitutional claims.

regardless whether the underlying conduct occurred while the notice provision was in effect.

## I. Background

In April 2005 Williams was tasked by APRA with overseeing the implementation of ACIS, a new client information system being developed by a software contractor that was supposed to capture demographic and client assessment data, similar to a system of electronic medical records. Phase 1, in which the program was installed at a single hospital and collected client demographic information, was completed in June 2005, but there was no subsequent progress toward Phase 2, which was supposed to include bringing more hospitals and other facilities online, adding client medical assessments, and measuring them against national outcome standards. The deadline set for Phase 2 was August 2005. The third and final phase was to be completed and the contract closed out by November 2006.

In February 2006, APRA was going to have to answer for its progress, or lack thereof, on the project at a routine oversight hearing before the D.C. Council's Committee on Health, chaired by Councilman David Catania. In preparation, Williams drafted written answers to the Council's questions and submitted them to her supervisor, Robert Johnson. According to Williams's trial testimony, the answers ultimately submitted to the Council were not as she had drafted them and were materially misleading. Although she had written that ACIS at that time could collect only demographic data, the answers that APRA submitted to the Council indicated it could collect client assessment data to be measured against national outcome standards; similarly, although she had written that the system would not be fully

rolled out until November 2006, the submitted answers stated that would happen in July 2006.

At the hearing, when Chairman Catania asked Johnson about ACIS, Johnson deferred to Williams, putting the altered answers in front of her and saying "go for it." According to Williams's trial testimony, she saw for the first time when she sat down to testify that her answers had been changed but she understood Johnson wanted her to stick to the script, so to speak. Williams instead testified truthfully, telling the Council that ACIS had not yet been implemented at all the planned facilities and could collect only demographic data. Chairman Catania expressed frustration with these responses, concluding that the system was essentially useless and that without assessment data "we're just burning money." Williams also testified that the expected date for collecting assessment data was November 2006, and although Catania noted the discrepancy with the official estimate of July 2006, he approved the extension. Finally, noting the program was way over budget, the Chairman warned "this smells," and threatened a False Claims Act investigation into "what looks like a competitively bid contract," insinuating wrongdoing, perhaps on the part of APRA in awarding the contract. At trial the jury saw a videotape of this entire exchange.

The day after the hearing, Johnson held a staff meeting at APRA in which he expressed concern over the threatened investigation and blamed it on Williams's testimony; according to Williams, Johnson said she had "made APRA look like 'crooks,' and made it appear the agency was doing something wrong." According to trial testimony by both Williams and other witnesses, Johnson and his chief of staff harassed Williams from this time forward by, among other things, treating her with open hostility, subjecting her to impossible demands, and threatening to terminate her. In

March 2006, one month after the hearing, Williams met privately with Councilman Catania to discuss the problems with ACIS and the harassment she was experiencing. After this meeting, Williams testified, the harassment "took on a different spin;" eventually Johnson stripped her of all responsibilities, staff, and resources.

Beginning in August 2006, Williams sent the D.C. Office of Risk Management several letters alleging harassment. In October she began looking for a new job. At the beginning of December, she filed this lawsuit, alleging retaliation for her disclosures both at the Council hearing and at her private meeting with Councilman Catania. The trial court granted the District's motion for summary judgment with regard to her claims concerning the private meeting for want of evidence that Williams's supervisors were aware of that meeting. *Williams v. Johnson*, 701 F. Supp. 2d 1, 16-19 (D.D.C. 2010).

At the end of December 2006, Williams was informed that Johnson would not be returning in the new mayor's administration. Her new supervisor, Linda Fisher, started in January 2007 and Williams immediately asked Fisher to restore her previous responsibilities. Although Fisher never demonstrated any animus toward Williams, she did eliminate Williams's position, transfer her to a different group, and from February through June 2007 did not give her any significant work to do. In June 2007, Williams finally resigned because, she testified, "I had no job. I had no duties." She took a position with the U.S. Public Health Service, accepting a lower salary and less responsibility than in her prior position.

In August 2010, more than three years after she had resigned, Williams amended her complaint to claim the difference in pay "she would have earned had she not been

constructively discharged." The District moved for summary judgment on Williams's constructive discharge claim, arguing she had not given the District notice of that claim, as required by D.C. Code § 12-309, within six months of the alleged retaliation. The court denied this motion on the ground that the D.C. Council had since dropped compliance with § 12-309 as a requirement for making claims under the WPA and that this amendment applied retroactively to relieve Williams of the duty to notify. *Williams v. Johnson*, 794 F. Supp. 2d 22 (D.D.C. 2011).

When the case went to trial, Williams pressed eleven claims of retaliation under the WPA. The court dismissed one and the jury found for Williams on the other ten, awarding her $300,000 in damages. The jury returned a special verdict finding Williams had made a "protected disclosure" before the D.C. Council and that, in view of her treatment leading up to and at the time she quit, her resignation amounted to a constructive discharge. The District moved for judgment as a matter of law or for a new trial, arguing the evidence did not support either of the jury's findings. The district court denied that motion, *Williams v. Johnson*, 870 F. Supp. 2d 158 (D.D.C. 2012), the District appealed, and Williams filed a conditional cross-appeal.

## II. Analysis

When an appellant challenges a district court's denial of a motion for judgment as a matter of law filed after a jury verdict is entered, as does the District here, our review is "very limited." *Ferebee v. Chevron Chem. Co.*, 736 F.2d 1529, 1534 (D.C. Cir. 1984). In contrast, we review *de novo* the purely legal question whether Williams's claim for constructive discharge was barred by the requirement of timely notice. *See Whatley v. District of Columbia*, 447 F.3d

814, 819-20 (D.C. Cir. 2006).  At the same time, however, we defer to the District of Columbia Court of Appeals' interpretation of the D.C. Code.  *See United States v. Edmond*, 924 F.2d 261, 264 (D.C. Cir. 1991).

Williams cross-appeals in the event we vacate the verdict, seeking to reinstate her claims based upon the private meeting with Councilman Catania.  Because we affirm the judgment of the district court, we do not reach Williams's cross-appeal.

A.  Sufficiency of the Evidence

The jury performs its quintessential function when it decides the magnitude of a misdeed.  *Cf. Dellums v. Powell*, 566 F.2d 167, 207 (D.C. Cir. 1977) (Leventhal, J., concurring) ("It is ... a traditional function of the jury to make judgments as to the reasonableness of an actor's conduct"). In this case, the jury was charged with deciding the significance of the agency misconduct Williams disclosed to the Council as well as the degree of mistreatment she endured until she resigned.  Because the jury was correctly instructed about the requirements of the law, the District argues only that the evidence presented at trial did not support the jury's conclusion that the District's misconduct was sufficiently serious to trigger liability.  As the District well knows, however, we will not overturn a jury verdict "unless the evidence and all reasonable inferences that can be drawn therefrom are so one-sided that reasonable men and women could not disagree." *Scott v. District of Columbia*, 101 F.3d 748, 753 (D.C. Cir. 1996).

1.  Protected disclosure

We have often noted in retaliation cases that whether the employee plaintiff engaged in a protected activity is a "fact

specific inquiry." *See, e.g.*, *Shekoyan v. Sibley Int'l*, 409 F.3d 414, 423 (D.C. Cir. 2005) (applying whistleblower provision of the False Claims Act). The fact specific question here is whether Williams's disclosure to the Council is the kind of revelation the WPA is meant to protect. The D.C. Court of Appeals has held that a disclosure is protected by the WPA if it reveals "such serious errors by the agency that a conclusion the agency erred is not debatable among reasonable people." *Wilburn v. District of Columbia*, 957 A.2d 921, 925 (2008) (quoting *White v. Air Force*, 391 F.3d 1377, 1382 (Fed. Cir. 2004)). Pursuant to the statutory definition of "protected disclosure," that agency error can take any of several forms:

(A) Gross mismanagement;
(B) Gross misuse or waste of public resources or funds;
(C) Abuse of authority in connection with the administration of a public program or the execution of a public contract;
(D) A violation of a federal, state, or local law, rule, or regulation, or of a term of a contract between the District government and a District government contractor which is not of a merely technical or minimal nature; or
(E) A substantial and specific danger to the public health and safety.

D.C. Code § 1-615.52(a)(6).

The District first argues that Williams's disclosure about the failures of ACIS is like disclosures the D.C. Court of Appeals has previously held insufficient to qualify as "the type of gross abuse or violations described in the statute." *Wilburn*, 957 A.2d at 926.

The D.C. Court of Appeals held in *Wilburn* that an employee did not make a protected disclosure under § 1-615.52(a)(6) when the "gist" of her revelation was that a government contractor's work was sometimes unsatisfactory and it had "just barely met the contractual requirements." *Id.* The court also cited with approval a Federal Circuit decision holding that an employee did not disclose a gross waste of funds by revealing that the Army paid for a scientist to travel abroad for a meeting even though it was not necessary to the Army's mission. *Id.* at 925 (citing *Ward v. Merit Sys. Prot. Bd.*, 981 F.2d 521, 523-28 (Fed. Cir. 1992)).

The District also calls our attention to a decision that issued after oral argument in the present case: *District of Columbia v. Poindexter*, Nos. 12-CV-1477 & 13-CV-82 (D.C. Dec. 11, 2014). In that case, the Court of Appeals overturned a WPA jury verdict, holding that the plaintiff did not reveal gross mismanagement when she disclosed that her supervisor required some employees to record their time but had a more lax policy with others. The court announced that the test for "gross mismanagement" is that the "action or inaction ... creates a substantial risk of significant adverse impact on the agency's ability to accomplish its mission" and it viewed the plaintiff's disclosure as falling short because there was a "difference of opinion" whether certain employees should record their time. *Id.*, slip op. at 11-13 (citation omitted).

In each of these cases, the employee's disclosure was minor relative to the scope of the agency's work. In the present case, however, there is surely room for debate whether Williams's disclosure about the failures of ACIS is significant enough to fall within any of several types of disclosures protected under § 1-615.52(a)(6); therefore, the district court correctly let the jury decide the matter.

Implementing ACIS was an important objective for APRA and there could be no difference of opinion that the project was off course. APRA's expenditures on ACIS were significant and, in Councilman Catania's words, Williams's disclosure showed the agency was "just burning money" given that the system could only report gender, sex, and race. This case is not like *Wilburn*, in which the contractual requirements had been met, if just barely. To the contrary, in discussing the contractor's performance, Catania questioned whether the software vendor had violated the False Claims Act and remarked "this smells ... three-and-a-half million dollars for some simple data collection, this shouldn't take two years, this should take 20 minutes and it sure shouldn't cost three million dollars." Although the Councilman's opinion is not dispositive, he was familiar with the goals of the project and had no apparent reason to overstate the problems Williams disclosed during the Council meeting. Therefore, the jury could reasonably infer from his reaction to the facts Williams disclosed that APRA's oversight of the project constituted "gross mismanagement" or a "gross ... waste of public resources."

Even if APRA's mismanagement of ACIS was insufficiently serious to qualify Williams's statements for protection under the WPA, those statements may reasonably have been viewed by the jury as disclosing an "abuse of authority" or a "violation of ... law" within the ambit of § 1-615.52(a)(6). At trial, Williams testified that just before she testified to the Council, she saw her answers to the Council's questions had been changed, realized her supervisor wanted her to give the incorrect answers, and proceeded instead to give what she knew were the truthful answers.

The District argues Williams did not make clear which changes she saw and therefore the jury would "have to

speculate to find that Williams even knew that she was disclosing APRA's 'misstatement.'" This argument is too little too late. The District had the opportunity on cross-examination to clarify the extent to which Williams realized her answers had been changed, but it did not do so then and therefore left open to the jury the reasonable inference that Williams intentionally exposed APRA's effort to mislead the Council. Moreover, we think misleading the Council must be either an "abuse of authority" or a "violation of ... law" within the meaning of the statute defining "protected disclosure" because the express purpose of the WPA is to ensure employees are free to report, among other things, "fraud, abuse of authority," and "dishonesty." *See* D.C. Code § 1-615.51.

Finally, the District argues Williams did not present evidence of her subjective belief that her Council testimony revealed serious misconduct. Although it is true that Williams is protected by the WPA only if she "reasonably believed" she was revealing information demonstrating the serious misconduct described in § 1-615.52(a)(6), *see Freeman v. District of Columbia*, 60 A.3d 1131, 1141 (D.C. 2012), we find no support in the case law for the proposition that she needed to present separate evidence of her subjective belief. That a reasonable juror "with knowledge of the essential facts known to and readily ascertainable by the employee," *id.* at 1151 (citation omitted), could find that the revelations were objectively serious is sufficient to support a jury's finding that Williams believed them to be serious when she made them.

Only when the disclosing party was unaware of a fact critical to the significance of the information disclosed has the D.C. Court of Appeals held he lacked the requisite subjective belief. That was the situation in *Freeman*: the employee

disclosed conduct he did not know was illegal and therefore, the court held, he was not protected by the WPA. *Id.* at 1143. We could find no case, however, in which the D.C. Court of Appeals has required the disclosing party to offer evidence that he appreciated the gravity of something that, knowing all the facts he knew, a reasonable person could determine was objectively serious. The District points to *Zirkle v. District of Columbia*, 830 A.2d 1250 (D.C. 2003), but that case is unhelpful. There the court considered the disclosing party's subjective understanding of the gravity of the conduct only because it was not objectively serious; he thought the conduct he disclosed was illegal but it was not. *Id.* at 1259-60.

In sum, before the district court gave the jury the special verdict form with the question "Do you find that Plaintiff's testimony before the District of Columbia Council in February 2006 included or constituted a protected disclosure?" it had been presented with sufficient evidence to answer in the affirmative.

2. Constructive discharge

"Whether working conditions are so intolerable that a reasonable person is forced to resign," like the question whether a disclosure is sufficiently serious to warrant protection, "is a question for the trier of fact." *Arthur Young & Co. v. Sutherland*, 631 A.2d 354, 362 (D.C. 1993) (citing *Simpson v. Fed. Mine Safety & Health Review Comm'n*, 842 F.2d 453, 463 (D.C. Cir. 1988)).

First, the District argues the jury could not reasonably conclude that harassment by Williams's former supervisors justified her resigning six months after they had left. That, however, was not what the jury was asked to determine; to the contrary, it was instructed to find Williams was constructively

discharged only if her working conditions were intolerable "at the time she left her position." The earlier harassment was relevant to the jury's inquiry only insofar as it may have created an intolerable situation that persisted until Williams finally resigned.

Second, the District argues the evidence does not support the jury in concluding Williams's working conditions at the time of her resignation were truly "intolerable." The D.C. Court of Appeals has held evidence of discriminatory actions that "essentially locked [the employee] into a position" that did not allow for career advancement is sufficient to support a finding of constructive discharge. *Id.* at 362-63 (citing *Clark v. Marsh*, 665 F.2d 1168, 1174 (D.C. Cir. 1981)). Williams testified that, despite her request, none of the job responsibilities her former supervisors had taken away from her was ever restored; indeed, her new supervisor eliminated her position and, although Williams was nominally put in a new position, her new supervisor had not found any work for Williams to do in more than five months of asking. In other words, Williams presented evidence that the damage her harassing supervisors had done had a lasting effect and that she was essentially unable to work, let alone advance, in her job. This scenario is far more dire than the one in *Aliotta v. Bair*, 614 F.3d 556 (D.C. Cir. 2010), upon which the District relies. There, the employee's prospects were merely uncertain because the employer had threatened a reduction-in-force layoff. *Id.* at 566-67. Under the circumstances of this case, the district court was correct to let the jury resolve whether Williams had no reasonable choice but to resign when she did.

B. Requirement of Notice[*]

    Finally, the District argues that Williams should not have been able to bring her claim for constructive discharge because she did not satisfy the requirement of timely notice codified at § 12-309 of the D.C. Code:

> An action may not be maintained against the District of Columbia ... unless, within six months after the injury or damage was sustained, the claimant ... has given notice in writing to the Mayor of the District of Columbia of the approximate time, place, cause, and circumstances of the injury or damage.

At the time of Williams's resignation in June 2007, the provision of the WPA creating a private right of action for damages included a one-year statute of limitations as well as the following requirement: "A civil action brought pursuant to this section shall comply with the notice requirements of § 12-309." D.C. Code § 1-615.54(a) (2001). In March 2010, while the parties in this case were still filing pretrial motions, the Council amended the WPA to extend the statute of limitations to three years and to abolish the notice requirement. D.C. Code § 1-615.54(a)(2)-(3) ("Section 12-309 shall not apply to any civil action brought under this section"). The question

---

[*] We note that the District raised the argument that the notice requirement applied to Williams's constructive discharge at the summary judgment stage but not again after the verdict. Because this is a purely legal issue, we have jurisdiction to review it even though an order denying summary judgment is not usually a final decision subject to review. *Feld v. Feld*, 688 F.3d 779, 783 (D.C. Cir. 2012) ("We conclude that we have jurisdiction to hear [appellant's] legal argument because we hold a Rule 50 motion is not required to preserve for appeal a purely legal claim rejected at summary judgment").

therefore arises whether the 2010 amendment applies to the claim for constructive discharge, which Williams filed after the notice requirement was removed but arose while that requirement was still in effect.

The D.C. Court of Appeals has instructed that amendments to statutory procedural requirements "are generally held to apply to pending cases," but that a requirement is not merely procedural if applying the amendment would "impair vested rights." *Montgomery v. District of Columbia*, 598 A.2d 162, 166 (1991); *see also Bank of Am., N.A. v. Griffin*, 2 A.3d 1070, 1075-76 (D.C. 2010) (holding new requirement to file *lis pendens* notice was not "clearly procedural" because parties who had perfected their claims under the prior procedure for securing property had vested rights).

The District argues the notice requirement of § 12-309 is not merely procedural even though the D.C. Court of Appeals held a similar notice requirement was procedural in *Lacek v. Washington Hospital Center Corp.*, 978 A.2d 1194 (2009)*.* In that case, the Council had passed legislation requiring plaintiffs to provide notice of their claims to defendant medical providers, but the Court of Appeals deemed the provision "procedural" rather than substantive and applied it retroactively to require notice for a claim arising from conduct that had occurred before the notice requirement was added. *Id.* at 1197-98. The District attempts to distinguish the notice requirement in the instant case on the ground that it provided notice to the Government, not to a private defendant. According to the District, once the six-month window for providing notice had passed, the District had a vested right in its sovereign immunity from Williams's claim.

To be sure, where the notice requirement of § 12-309 applies, the D.C. Court of Appeals has instructed that "compliance with [it] is a condition precedent which, if not met, will prevent the destruction of sovereign immunity," *Tucci v. District of Columbia*, 956 A.2d 684, 695 (2008) (quotation marks and citation omitted). The District here argues that consequently, because its sovereign immunity is a substantive right, the amendment cannot be applied retroactively to its detriment. The District's reasoning, however, would obliterate the distinction between substance and procedure. Removing a condition precedent (here, notice) to the waiver of a substantive right (here, sovereign immunity) is not the same as abridging the substantive right itself; all procedural requirements are ultimately conditions precedent to some substantive right, else they would be requirements without consequence. As Williams points out, the Court of Appeals in *Tucci* was clear in stating the District's waiver of sovereign immunity is not contained in § 12-309; rather, the waiver "must be found in some other source." 956 A.2d at 696. Therefore, removing the § 12-309 requirement alters not the District's waiver of sovereign immunity but only the steps necessary for a plaintiff to invoke the waiver.

That the District was at one time during the pendency of this suit entitled to assert sovereign immunity does not, contrary to the District's argument, mean that entitlement vested. The District cites several cases in which a claim was time-barred and a court held it could not be revived even though the legislature had subsequently extended the statute of limitations. Those cases are crucially different from this one because the very purpose of a statute of limitations is to assure defendants that after a time certain they are free from suit, an assurance that would be meaningless if a subsequent amendment could at any time revive the claim. In the

statutory scheme before us, there was both a statute of limitations and a notice-of-claims requirement; obviously, therefore, the District's notice requirement was neither needed nor intended to give the District security in being free from suit. *Cf. Brown v. United States*, 742 F.2d 1498, 1505-06 (D.C. Cir. 1984) (en banc) (reasoning that § 12-309 "has a purpose that is quite distinct" from "statutes of limitations, tolling policies, and survival rules, that serve the exclusive purpose of defining that point where the right to maintain a cause of action ends").

Rather, we think abolishing § 12-309 as a condition precedent for a WPA claim means the Council was willing to submit the District to suit by whistleblowers without retaining the litigation advantage of early notice. *See id.* at 1502 (determining the purpose of § 12-309 is "to provide the District an opportunity to investigate claims when all evidence is still fresh, to allow the District to seek out early settlement of meritorious claims, and generally to protect the District's revenues from unreasonable suits"). Although the District may have been better able to gather evidence or to settle the case on favorable terms if it had been on earlier notice of Williams's claim for constructive discharge, those advantages bear upon the process of litigation, not upon the District's or Williams's substantive rights under the WPA. The Council's determination that the procedural costs in a case such as this are an acceptable price to pay for the increased protection of whistleblowers divested the District of its former right to early notice.

Accordingly, we think *Lacek* controls and the instant notice-of-claims requirement is procedural. Williams, therefore, benefits from the amendment removing the requirement and is not barred from bringing her constructive

discharge claim even though she did not formally notify the District of that claim within six months of resigning.

## III. Conclusion

For the reasons stated above, we agree with the district court that Williams could bring her constructive discharge claim and that the jury verdict was supported by sufficient evidence of a protected disclosure and of a constructive discharge. Accordingly, there is no need to reach Williams's cross-appeal. The judgment of the district court entering the verdict is

*Affirmed.*