# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued January 25, 2019                    Decided June 25, 2019

No. 18-7058

EDGE INVESTMENT, LLC,
APPELLANT

v.

DISTRICT OF COLUMBIA, ET AL.,
APPELLEES

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:17-cv-00621)

———

*James D. Sadowski* argued the cause for appellant.  With him on the briefs was *Richard W. Luchs*.

*Creighton R. Magid* argued the cause and filed the brief for appellees District of Columbia Water and Sewer Authority, et al.  *Curtis A. Boykin* and *Frederick A. Douglas* entered appearances.

*Karl A. Racine*, Attorney General, Office of the Attorney General for the District of Columbia, *Loren L. AliKhan*, Solicitor General, *Caroline S. Van Zile*, Deputy Solicitor General, and *Sonya L. Lebsack*, Assistant Attorney General, were on the brief for appellees The District of Columbia, et al.

Before: GARLAND, *Chief Judge*, KATSAS, *Circuit Judge*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Chief Judge* GARLAND.

GARLAND, *Chief Judge*:  The plaintiff in this case appeals from a decision staying proceedings on its federal complaint. The district court granted the stay pursuant to the *Colorado River* doctrine, which permits a federal court to stay or dismiss a federal action in favor of a concurrent action in state court under "exceptional circumstances."  *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976). Because there are no exceptional circumstances here, we reverse the grant of the stay.  We explain our decision in some detail in order to ensure that *Colorado River* is confined to its banks.

I

The facts underlying this appeal concern the efforts of Edge Investment, LLC -- a real estate development company -- to construct a three-story building on an undeveloped parcel of land in Washington, D.C.  Edge alleges that, by 2013, it had nearly completed construction of the building after having obtained various zoning and construction clearances from District of Columbia authorities.  Those included the D.C. Water and Sewer Authority ("D.C. Water") and the D.C. Department of Consumer and Regulatory Affairs (DCRA).  *See* Compl. ¶¶ 41, 57-58.

As it turned out, Edge's building sat atop the Northeast Boundary Tunnel Sewer, a large storm sewer that forms an important piece of the District of Columbia's sewer infrastructure.  When Edge learned this in December 2013, it hired an engineering firm, which concluded that the building did not present any danger to the Tunnel Sewer.  According to D.C.

Water, however, subsequent inspections in 2014 revealed a crack in the Tunnel Sewer requiring demolition of the building to prevent further damage. *See id.* ¶¶ 77, 98, 109-11. In April 2015, DCRA issued an order to raze the building pursuant to D.C. Code § 6–801, which empowers the Mayor to remove "unsafe" structures posing a threat to public safety. Compl. Ex. N (J.A. 115). And in May 2015, a contractor for D.C. Water, Celtic Demolition, Inc., razed the building.

On January 8, 2016, D.C. Water sued Edge, the District of Columbia, and seven other defendants for negligence in the Superior Court of the District of Columbia, seeking to recover the $3.6 million it spent to raze Edge's building and repair the Tunnel Sewer. On October 24, 2016, Edge filed counterclaims against D.C. Water, alleging that it had violated Edge's due process rights under the U.S. Constitution, engaged in a taking without just compensation in violation of the Fifth Amendment, trespassed, and negligently failed to timely notify Edge of the location of the Tunnel Sewer as required by the D.C. Code. On November 7, Edge filed a third-party complaint in Superior Court, leveling similar allegations against the District of Columbia. Edge's third-party complaint also sought to quiet title as against the District and anyone acting on its behalf, including D.C. Water. In December 2016, the District removed the Superior Court case to federal district court. Several months later, the case was remanded back to Superior Court.

On April 6, 2017, Edge commenced the instant federal case in the U.S. District Court for the District of Columbia. Edge's complaint named the District, D.C. Water, and several additional defendants, including Celtic Demolition and D.C. Water's then general manager, George S. Hawkins. The federal complaint asserted that the individual defendants had engaged in an unlawful conspiracy under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962(c), and that the

District and D.C. Water had acted without properly delegated authority under D.C. Code § 6–801(a). The remaining causes of action substantially overlap Edge's Superior Court counterclaims and third-party complaint. *See* Compl. ¶¶ 251-85 (due process); *id.* ¶¶ 286-92 (unconstitutional takings); *id.* ¶¶ 335-49 (negligent supervision and negligence); *id.* ¶¶ 350-60 (trespass); *id.* ¶¶ 361-65 (quiet title).

On June 9 and 21, 2017, respectively, D.C. Water and Hawkins moved to stay or dismiss the federal case in favor of the Superior Court proceedings. The motion was based on the Supreme Court's decision in *Colorado River Water Conservation District v. United States*, which permits deferral under "exceptional" circumstances "due to the presence of a concurrent state proceeding." 424 U.S. at 818. On March 30, 2018, the district court granted the stay, concluding this was such an exceptional case. Edge appeals.[1]

## II

As the Supreme Court explained in *Colorado River*, "[g]enerally, as between state and federal courts, the rule is that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." 424 U.S. at 817 (internal quotation marks omitted). This, the Court said, is a consequence of the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." *Id.* Accordingly, "the circumstances permitting the dismissal of a federal suit due to the presence of

---

[1] We have jurisdiction over this appeal per *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 10-13 (1983). *See also Ambrosia Coal & Constr. Co. v. Pagés Morales*, 368 F.3d 1320, 1327 n.15 (11th Cir. 2004).

a concurrent state proceeding" must be "exceptional." *Id.* at 818.[2]

All of the subsequent Supreme Court and D.C. Circuit cases addressing the *Colorado River* doctrine have stressed the unflagging obligation of the federal courts to exercise their jurisdiction, which only "exceptional circumstances" can overcome.[3] Indeed, *Moses H. Cone* repeatedly referred to this

---

[2] The petitioner in *Moses H. Cone* argued "that the *Colorado River* test [was] somehow inapplicable" because in *Moses H. Cone* "the District Court merely stayed the federal litigation" -- as the district court did here -- "rather than dismissing the suit outright, as in *Colorado River*." 460 U.S. at 27. The Supreme Court rejected that distinction. *Id.* at 27-28.

[3] *See Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996); *Wilton v. Seven Falls Co.*, 515 U.S. 277, 284-85 (1995); *Moses H. Cone*, 460 U.S. at 16; *Arizona v. San Carlos Apache Tribe of Ariz.*, 463 U.S. 545, 552 (1983); *see also Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 77 (2013) ("Jurisdiction existing, this Court has cautioned, a federal court's 'obligation' to hear and decide a case is 'virtually unflagging.' Parallel state-court proceedings do not detract from that obligation." (quoting *Colo. River*, 424 U.S. at 817)); *Handy v. Shaw, Bransford, Veilleux & Roth*, 325 F.3d 346, 351 (D.C. Cir. 2003) ("[T]he Supreme Court has consistently reinforced 'the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them,' [and] it has sanctioned the '[a]bdication of the obligation to decide cases [as] justified . . . only in the exceptional circumstances where the order to the parties to repair to the State court would clearly serve an important countervailing interest.'" (quoting *Colo. River*, 424 U.S. at 817; *Moses H. Cone*, 460 U.S. at 14)); *Reiman v. Smith*, 12 F.3d 222, 224 (D.C. Cir. 1993) (noting that the district court has an "'unflagging obligation' to exercise the jurisdiction it has been granted," and that "stay or dismissal of a case over which the court has jurisdiction must be regarded as exceptional"); *Hoai v. Sun Ref. & Mktg. Co.*, 866 F.2d 1515, 1518 (D.C. Cir. 1989) ("The *Colorado*

as "*Colorado River*'s exceptional-circumstances test." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16, 17, 19 (1983). So, too, have later cases. *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 279 (1995); *Handy v. Shaw, Bransford, Veilleux & Roth*, 325 F.3d 346, 349 (D.C. Cir. 2003); *Reiman v. Smith*, 12 F.3d 222, 224 (D.C. Cir. 1993).

In *Colorado River* and *Moses H. Cone*, the Court described "some of the factors relevant" to whether a case represents the kind of exceptional circumstances required to defer to state court proceedings. *Moses H. Cone*, 460 U.S. at 15. Those include which "court first assum[ed] jurisdiction over property . . . [;] . . . the inconvenience of the federal forum; the desirability of avoiding piecemeal litigation; and the order in which jurisdiction was obtained by the concurrent forums." *Id.* (quoting *Colo. River*, 424 U.S. at 818). Other recognized factors are "whether federal or state law controls and whether the state forum will adequately protect the interests of the parties." *Handy*, 325 F.3d at 352 (citing *Moses H. Cone*, 460 U.S. at 25-26).

The Court cautioned, however, that the decision to defer "does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone*, 460 U.S. at 16; *see Handy*, 325 F.3d at 353 (same). It emphasized that "*[o]nly the clearest of justifications will warrant*" deferral. *Moses H. Cone*, 460 U.S. at 16 (quoting *Colo. River*, 424 U.S. at 819) (emphasis in *Moses*

---

*River* doctrine . . . instructs that only truly 'exceptional circumstances' will allow a federal court to stay or dismiss a federal action in favor of a concurrent action before a state court."); *Martin-Trigona v. Smith*, 712 F.2d 1421, 1426 (D.C. Cir. 1983) ("*Colorado River* teaches that only the clearest justification warrants dismissal once a federal court has jurisdiction over a claim . . . .").

*H. Cone*).  And, as befits an exception so described, the Supreme Court has found sufficient justification only in the circumstances described in *Colorado River* itself,[4] while this court has never found such circumstances.

With respect to the standard that appellate courts must apply in reviewing a district court decision to defer to parallel state proceedings, *Moses H. Cone* instructed as follows:

> [T]he decision whether to defer to the state courts is necessarily left to the discretion of the district court in the first instance.  Yet to say that the district court has discretion is not to say that its decision is unreviewable; such discretion must be exercised under the relevant standard prescribed by this Court.  In this case, the relevant standard is *Colorado River*'s exceptional-circumstances test.

460 U.S. at 19.  "Whether the [district] court applied the proper legal standard in exercising [its] discretion . . . is a question of law reviewed *de novo*."  *Handy*, 325 F.3d at 349; *see id.* at 353 (holding that "the district court's dismissal of [plaintiff's] claim constitutes legal error").  As the Supreme Court did in *Moses H. Cone*, we conclude that "the District Court in this case abused

---

[4] In *Arizona v. San Carlos Apache Tribe of Arizona*, 463 U.S. 545 (1983), which the Court described as a "sequel" to *Colorado River*, *id.* at 548, the Court approved deferring to state proceedings for the adjudication of "certain Indian water rights in Arizona or Montana," *id.* at 553.  The Court noted that "the most important consideration in *Colorado River*, and the most important consideration in any federal water suit concurrent to a comprehensive state proceeding, must be the 'policy underlying the McCarran Amendment.'"  *Id.* at 569-70 (quoting *Colo. River*, 424 U.S. at 820).  As discussed below, there is no such policy or comparable interest involved in this case.

its discretion in granting the stay" because deferral was unwarranted under the exceptional-circumstances test. 460 U.S. at 19.

## III

In deciding whether to grant the stay, the district court ran through a list of what it described as six "*Colorado River* factors." *Edge Inv., LLC v. District of Columbia*, 305 F. Supp. 3d 22, 28 (D.D.C. 2018). Following its examination of those factors, the court stated: "In sum, the Court concludes that [one] factor . . . is irrelevant, [two] factors . . . are neutral, and [three] factors . . . favor abstention. Thus, the Court concludes that this constitutes an 'exceptional circumstance' where abstention is warranted." *Id.* at 35.[5] The district court's approach finds support in several other (unappealed) district court opinions in this circuit and more in other circuits.

The problem with this kind of toting up, however, is that it runs contrary to the Supreme Court's direction that deferral "does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, *with the balance heavily weighted in favor of the exercise of jurisdiction*." *Moses H. Cone*, 460 U.S. at 16 (emphasis added); *accord Handy*, 325 F.3d at 353. If, as we have held, "only truly 'exceptional circumstances' will allow a federal court to stay or

---

[5] Although many courts have referred to *Colorado River* as an "abstention doctrine," the Supreme Court said it was not because it did not rest "on considerations of state-federal comity or on avoidance of constitutional decisions." *Moses H. Cone*, 460 U.S. at 14-15. Rather, it rested on "considerations of [w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Colo. River*, 424 U.S. at 817 (internal quotation marks omitted).

dismiss a federal action in favor of a concurrent action before a state court," *Hoai*, 866 F.2d at 1518, then it is not enough that the factors favoring deferral outnumber those opposed (or neutral). Rather, the factors favoring deferral must themselves be exceptional.

In this case, none of the three factors that the court found to favor deferral -- "avoiding piecemeal litigation," "which court first obtained jurisdiction over the case," and "whether federal law or state law controls," *Edge*, 305 F. Supp. 3d at 31-33 -- was truly exceptional. We address those factors below.[6]

A

The district court found that "permitting the Superior Court Action and this case to proceed in tandem will result in piecemeal litigation, and thus this factor strongly favors abstention." *Id.* at 32. Avoiding piecemeal litigation was certainly a factor in *Colorado River*. But the circumstances there were materially different from those in this case.

In *Colorado River*, the United States brought suit in federal district court against some 1,000 nonfederal water users, seeking a declaration of the water rights of certain federal entities and

---

[6] With respect to the remaining three factors that the court considered, it found that: which court first obtained jurisdiction over property was irrelevant because the case did not involve in rem jurisdiction over property, *Edge*, 305 F. Supp. 3d at 30-31; "any inconvenience that might result from litigating in a federal forum" was neutral "because the Superior Court and [the federal court] are located across the street from one another," *id.* at 31; and "whether the state forum will adequately protect the interests of the parties" was neutral because deference to the Superior Court would not prejudice Edge, *id.* at 34-35.

Indian tribes. Shortly thereafter, a defendant in that suit sought to join the United States in ongoing state-court proceedings for the comprehensive adjudication and administration of all water rights within the river system at issue in the federal-court suit. The district court dismissed the federal suit, deferring to the state-court proceedings, and the Supreme Court affirmed the dismissal. *See Colo. River*, 424 U.S. at 805-06.

As the Court subsequently explained in *Moses H. Cone*, "[b]y far the most important factor in our decision to approve the dismissal there was the 'clear federal policy . . . [of] avoidance of piecemeal adjudication of water rights in a river system,' as evinced in the McCarran Amendment," a statute that "represent[ed] Congress's judgment that the field of water rights is one peculiarly appropriate for comprehensive treatment in the forums having the greatest experience and expertise, assisted by state administrative officers acting under the state courts." 460 U.S. at 16 (quoting *Colo. River*, 424 U.S. at 819). And as this court likewise said in *Hoai*,

> [T]he avoidance of piecemeal litigation as a factor that might favor a stay . . . assumed importance in *Colorado River because* the litigation there involved a federal statute under which Congress had explicitly recognized the availability of state systems for the adjudication of water rights and had expressed a strong policy favoring resolution of those rights in a single, comprehensive forum.

866 F.2d at 1520 (emphasis added). As in *Hoai*, "[n]o such policy is implicated in the case at bar." *Id.*

Nonetheless, even without a statutory policy, the avoidance of piecemeal litigation remains a relevant (although perhaps less important) factor under the *Colorado River* doctrine. *See Moses*

*H. Cone*, 460 U.S. at 19-20. Here, the district court relied on that factor, finding it relevant because "deciding D.C. Water's motion to dismiss in this Court would involve different tribunals consider[ing] the same issue, thereby duplicating efforts and possibly reaching different results." *Edge*, 305 F. Supp. 3d at 32 (internal quotation marks omitted).

But the mere risk of duplicating efforts and different results is not what the Supreme Court meant by piecemeal litigation. *See Moses H. Cone*, 460 U.S. at 7 (affirming reversal of a district court that had stayed a "federal-court suit pending resolution of the state-court suit because the two suits involved the identical issue"). Indeed, in *Colorado River*, the Court explained that the principle of avoiding duplicative litigation does not generally govern parallel federal-state litigation but does govern parallel federal-federal litigation:

> Generally, as between state and federal courts, the rule is that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction . . . . As between federal district courts, however, though no precise rule has evolved, the general principle is to avoid duplicative litigation. This difference in general approach between state-federal concurrent jurisdiction and wholly federal concurrent jurisdiction stems from the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them.

424 U.S. at 817 (internal quotation marks and citations omitted). "[T]he mere potential for conflict in the results of adjudications," the Court said, "does not, without more, warrant staying exercise of federal jurisdiction." *Id.* at 816. This court has repeated, and emphasized, that same distinction between federal-state and federal-federal parallel proceedings. *See Hoai*,

866 F.2d at 1520 ("[T]he mere desire to resolve all issues involving related facts in one court does not justify depriving [the plaintiff] of his federal forum."); *see also Handy*, 325 F.3d at 349-50.[7]

Yet, mere duplication and potential inconsistency -- in their simplest forms -- are all we have here.  There are only two, relatively confined litigations at issue:  a single Superior Court action (including a third-party complaint and counterclaims) and a single federal-court action.  Moreover, as the district court recognized: "[t]he vast majority of the claims that Edge asserts in federal court were also asserted in the Superior Court"; "[b]oth cases arise from the same core set of facts"; and the issues "will be resolved largely by reference to the same evidence." *Edge*, 305 F. Supp. 3d at 29 (internal quotation marks omitted).  In addition, the parties in the two cases are "substantially similar":  "Specifically, Edge, D.C. Water, and the District are the central parties to Edge's claims in both." *Id.* at 30.  These facts suggest that the doctrines of res judicata and collateral estoppel will substantially mitigate the risk of conflicting results.  And although the district court identified two narrow questions that preclusion principles "may not" resolve, *id.* at 32-33, such hypothetical conflicts over discrete issues do not amount to an exceptional circumstance.

In short, this case raises nothing like the "piecemeal litigation" risks at issue in *Colorado River*, where the court stayed the federal suit "against some 1,000 nonfederal water users" in deference to a "state-court proceeding for the

---

[7] "Although the Superior Court is a congressionally created court and, thus, 'federal' in its creation, we . . . review[] the district court's discretionary dismissal in favor of parallel proceedings in Superior Court under the standard applicable to a parallel state court proceeding." *Handy*, 325 F.3d at 351.

comprehensive adjudication and administration of all water rights within the river system." *Moses H. Cone*, 460 U.S. at 13-14 (describing the *Colorado River* litigation). Instead, it is a garden-variety example of two lawsuits proceeding concurrently in two courts. As the Eleventh Circuit noted when confronted with an analogous claim of "piecemeal litigation," if that *Colorado River* factor supports deferral in this case, then it "would seemingly support abstention in every federal case that has a parallel state case." *Ambrosia Coal & Constr. Co. v. Pagés Morales*, 368 F.3d 1320, 1333 (11th Cir. 2004). But "*Colorado River*'s factor concerning the avoidance of piecemeal litigation does not favor abstention unless the circumstances enveloping those cases will likely lead to piecemeal litigation that is abnormally excessive or deleterious." *Id*. And those circumstances do not exist in the case at hand.

B

A second factor that the district court thought "weigh[ed] heavily in favor of abstention" was "which court first obtained jurisdiction over the case." *Edge*, 305 F. Supp. 3d at 31. In issuing its stay on March 30, 2018, the court explained this consideration as follows:

> The Superior Court Action was filed first. D.C. Water filed it on January [8], 2016, and Edge filed its counterclaims on October 24, 2016. The instant action was not filed until April 6, 2017, [fifteen] months after the Superior Court Action and about six months after Edge filed its counterclaims in that case. . . . Here, not only was the Superior Court Action filed first, it is significantly ahead of this case. On November 17, 2017, [Superior Court] Judge Mott issued a decision on D.C. Water's motion to dismiss Edge's amended counterclaims, denying it as to six of the seven

> counterclaims.  And on January 12, 2018, [Superior Court] Judge Cordero issued a revised Scheduling Order that established deadlines over the next year for expert disclosure, the end of discovery, dispositive motions, and mediation.  Expert reports, to take one example, are due in little over a month from now.

*Id.* (internal citations omitted).  But as with the risk of piecemeal litigation, there is nothing exceptional about the relative progress of the two cases.

To begin, there is room to dispute the length and significance of what transpired in each court, and Edge does.  Edge Br. 26-28.  It points out that it filed its third-party complaint in Superior Court just six months before it filed its federal case, and thus the Superior Court had only a six-month head start on those claims.  In addition, Edge's federal case included some claims that had never been considered by the Superior Court (e.g., the RICO claims, Compl. ¶¶ 293-328), so there was no head start as to those at all.  Edge further notes that the fifteen-month and even the six-month figures are overstated because they do not take account of five months of dormancy between the time the District of Columbia removed the Superior Court case to federal court and the time the case was remanded and reassigned to a different Superior Court judge.  *See* Edge Br. 27.

Edge also disputes the significance of what transpired in state court.  It notes that the Superior Court did not rule on D.C. Water's motion to dismiss until seven months after Edge filed its federal case.  And the Superior Court issued its revised scheduling order just two months before the district court granted the stay.  Moreover, there is no reason to think that any expert report or other kind of discovery produced in Superior Court could not also be of use in federal court.

But the bottom line, under any calculation, is that D.C. Water filed its Superior Court complaint just fifteen months before Edge filed its federal case, that Edge filed its third-party Superior Court complaint just six months before Edge filed its federal case, and that when the latter was filed, it included some claims that had never been considered by the Superior Court at all. Those relatively brief periods are readily distinguishable from the head start at issue in *Tyrer v. City of South Beloit*, the out-of-circuit case the defendants cited at oral argument as best supporting their position that this factor is exceptional. Oral Arg. at 45:09; *see Tyrer v. City of S. Beloit*, 456 F.3d 744, 755 (7th Cir. 2006) ("By the time that [plaintiff] filed his federal suit, his state suit had been ongoing for approximately four years."). *Compare Hoai*, 866 F.2d at 1516-17 (reversing stay where the state action was commenced approximately twelve months before federal lawsuit), *with Reiman*, 12 F.3d at 224-25 (noting that a factor favoring deferral was that "the suit had been before the District of Columbia courts for a long time" -- seven years -- but holding that the district court had failed to adequately justify deferral and remanding for further consideration).

On appeal, the defendants emphasize how much more the Superior Court action has surpassed its federal counterpart since the district court issued the stay challenged here. That is hardly surprising, of course, because it is a necessary consequence of halting the federal proceeding. It is for that reason that an appellate court evaluates the relative progress of the two cases from the "time that the District Court decided to refuse to adjudicate the case." *Moses H. Cone*, 460 U.S. at 22.[8] And as

---

[8] If we were to evaluate relative progress by the time of the decision on appeal, that factor would place a heavy thumb on the scale of affirming stays and could eviscerate appellate review in many cases.

we have explained, the relative progress of the two cases was not exceptional as of that date.

C

The final factor upon which the district court relied was "whether federal law or state law controls." *Edge*, 305 F. Supp. 3d at 33. The court acknowledged the Supreme Court's direction that, "'[a]lthough in some rare circumstances the presence of state-law issues may weigh in favor of . . . surrender, the presence of federal-law issues must always be a major consideration weighing against surrender'" of federal jurisdiction. *Id.* (quoting *Moses H. Cone*, 460 U.S. at 26). Thus, the district court further acknowledged that "Edge's federal claims would normally be 'a major consideration weighing against surrender.'" *Id.* (quoting *Moses H. Cone*, 460 U.S. at 26). Nonetheless, the court "conclude[d] that this factor favors abstention for two reasons." *Id.*

1. The district court's first reason was that "the Superior Court has concurrent jurisdiction over all of Edge's federal claims, which are brought under the U.S. Constitution and RICO." *Id.* Relying on a passage in *Moses H. Cone*, the court said that "this reduces the importance of Edge's federal law claims in the abstention analysis," because the "source-of-law factor has 'less significance' when 'the federal courts' jurisdiction . . . is concurrent with that of the state courts.'" *Id.* (quoting *Moses H. Cone*, 460 U.S. at 25).[9] In *Moses H. Cone*,

---

[9] *Moses H. Cone* did not present this point as a general principle, but rather merely noted that "the source-of-law factor has *less significance here than in* [*Will v. Calvert Fire Insurance Co.*, 437 U.S. 655 (1978)], since the federal courts' jurisdiction to enforce the Arbitration Act [which was at issue in *Moses H. Cone*] is concurrent with that of the state courts," while jurisdiction to enforce the statute

however, the quoted passage was immediately followed by this reminder:

> But we emphasize that our task in cases such as this is not to find some substantial reason for the *exercise* of federal jurisdiction by the district court; rather, the task is to ascertain whether there exist "exceptional" circumstances, the "clearest of justifications," that can suffice under *Colorado River* to justify the *surrender* of that jurisdiction.

460 U.S. at 25-26 (emphasis in original).

Thus, the fact that a state court has concurrent jurisdiction over a plaintiff's federal claims does not itself constitute an exceptional circumstance warranting deferral to a state proceeding. It could hardly be otherwise, since "[c]oncurrent jurisdiction has been a common phenomenon in our judicial history, and exclusive federal court jurisdiction over cases arising under federal law has been the exception rather than the rule." *Tafflin v. Levitt*, 493 U.S. 455, 459 (1990) (internal quotation marks omitted). Rather, as the district court acknowledged, "'the presence of federal-law issues must *always* be a major consideration weighing *against* surrender.'" *Edge*, 305 F. Supp. 3d at 33 (quoting *Moses H. Cone*, 460 U.S. at 26) (emphasis added). At most, the presence of federal issues may be less of a factor weighing *against* deferral when the state court has concurrent jurisdiction than in the uncommon situation in which federal jurisdiction is exclusive. *See supra* note 9.

---

that was at issue in *Calvert* (the Securities Exchange Act of 1934) is not concurrent. 460 U.S. at 25 (emphasis added). The latter circumstance is uncommon. *See Tafflin v. Levitt*, 493 U.S. 455, 459 (1990).

2.  The court also found this to be "a rare case involving highly unusual state-law issues." *Edge*, 305 F. Supp. 3d at 33 (internal quotation marks omitted).  The complaint and briefing, the court said, "raise a number of novel, unusual, or difficult questions of state law."  *Id.* (internal quotation marks omitted).

To start, we note that neither the Supreme Court nor this court has ever listed the novelty or difficulty of a state-law issue as a factor indicating the kind of exceptional circumstances required for deferring to parallel state proceedings under *Colorado River*.  The presence of novel or difficult state-law questions in federal court litigation is not exceptional.  Federal courts exercising diversity jurisdiction frequently decide just such questions.[10]  And where the question is truly perplexing, this circuit has an alternative mechanism -- certification -- for clarifying questions of District of Columbia law.  *See* D.C. Code

---

[10] *See, e.g.*, *JPMorgan Chase Bank, N.A. v. Johnson*, 719 F.3d 1010, 1015 (8th Cir. 2013) ("Because the case presents a matter of first impression in Arkansas, we must predict, as best we can, how the Arkansas Supreme Court would decide it."); *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 635 (7th Cir. 2007) ("When faced with a novel question of state law, federal courts sitting in diversity have a range of tools at their disposal."); *Med. Lab. Mgmt. Consultants v. Am. Broadcasting Cos., Inc.*, 306 F.3d 806, 812 (9th Cir. 2002) (addressing a question of first impression under state law by "mak[ing] a reasonable determination of the result the highest state court would reach if it were deciding the case" (internal quotation marks omitted)); *Rolick v. Collins Pine Co.*, 925 F.2d 661, 664 (3d Cir. 1991) ("When presented with a novel issue of law, or where applicable state precedent is ambiguous, absent or incomplete, we must determine or predict how the highest state court would rule."); *Dean v. Dean*, 821 F.2d 279, 283 & n.4 (5th Cir. 1987) (resolving a "novel" question of state law without "any controlling decision" from the state courts by "mak[ing] an educated guess as to how the [state] Supreme Court would rule").

§ 11–723(a) (providing that the D.C. Court of Appeals "may answer questions of law certified to it by . . . a Court of Appeals of the United States . . . if . . . it appears to the certifying court there is no controlling precedent in the decisions of the District of Columbia Court of Appeals").

In any event, the state-law issues that concerned the district court are not exceptionally novel or difficult.  The court listed those issues as follows:

> [W]hether D.C. Code § 6–801 and D.C. Code § 42–3131 . . . provided the requisite authority to raze the Building; whether the Mayor properly delegated her legal authority to raze the Building to DCRA under D.C. Code §§ 6–801(a) and 42–3131.01(c); whether D.C. Code § 6–801(a) required DCRA to conduct an examination . . . before razing the Building; whether Edge is a member of the protected class envisioned by the [Underground Facilities Protection Act]; and whether the "public duty" doctrine bars Edge's negligent supervision claim . . . .
>
> There are also state law issues embedded in many of Edge's federal claims, such as whether D.C. Water's status under District of Columbia law . . . shields it from a federal constitutional takings claim; whether Edge received proper notice under D.C. Code § 6–903 . . . ; and whether Edge has properly pleaded common law fraud, one of the predicate acts alleged in the RICO claims.

*Edge*, 305 F. Supp. 3d at 33-34 (citations to district court pleadings omitted).  Although some of those specific issues may be novel, they do not appear unusually difficult, and they fall within broader categories that are quite familiar to federal

courts. Indeed, this court routinely resolves questions under the D.C. Code, including questions of delegation.[11]  Likewise, we routinely resolve a broad range of questions under the common law of the District of Columbia, including questions regarding the scope of the public-duty doctrine.[12]

D.C. Water further points out that Edge's constitutional due process claims are dependent on whether Edge has a property interest under state law.  D.C. Water Br. 24.  But federal courts regularly evaluate the existence of state property rights in the course of deciding federal due process and takings claims.  *See, e.g.*, *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577

---

[11] *See, e.g.*, *Rumber v. District of Columbia*, 487 F.3d 941, 945 (D.C. Cir. 2007) (resolving a challenge to "the District government's delegation of eminent domain authority to the [National Capital Revitalization Corporation] . . . [under] D.C. Code §§ 2–1219.01-1219.29"); *Shook v. D.C. Fin. Responsibility & Mgmt. Assistance Auth.*, 132 F.3d 775, 783 (D.C. Cir. 1998); *see also, e.g.*, *Williams v. Johnson*, 776 F.3d 865, 873-74 (D.C. Cir. 2015); *Williams v. Martinez*, 586 F.3d 995, 998-1001 (D.C. Cir. 2009).  Similarly, other circuits routinely resolve questions of state statutory interpretation, including whether delegations of state statutory authority are lawful. *See, e.g.*, *Hughes v. City of Cedar Rapids*, 840 F.3d 987, 997-98 (8th Cir. 2016); *Maxwell's Pic–Pac, Inc. v. Dehner*, 739 F.3d 936, 941-42 (6th Cir. 2014); *Rancho Lobo, Ltd. v. Devargas*, 303 F.3d 1195, 1206-07 (10th Cir. 2002); *Hillery v. Rushen*, 720 F.2d 1132, 1134-35 (9th Cir. 1983).

[12] *See, e.g.*, *McGaughey v. District of Columbia*, 684 F.3d 1355, 1358-59 (D.C. Cir. 2012) (determining whether the "public duty" doctrine barred a claim); *see also, e.g.*, *Feld v. Fireman's Fund Ins. Co.*, 909 F.3d 1186, 1194, 1197-98 (D.C. Cir. 2018); *Momenian v. Davidson*, 878 F.3d 381, 390-91 (D.C. Cir. 2017); *Robinson v. Wash. Metro. Area Transit Auth.*, 774 F.3d 33, 38-40 (D.C. Cir. 2014); *Novak v. Capital Mgmt. & Dev. Corp.*, 570 F.3d 305, 313-15 (D.C. Cir. 2009).

(1972) ("Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits."); *3883 Conn. LLC v. District of Columbia*, 336 F.3d 1068, 1072-73 (D.C. Cir. 2003) (determining whether D.C. law creates a property interest, protected by the Fifth Amendment, in preliminary building permits).

3. Finally, D.C. Water argues that one of the state-law issues noted by the district court is not just novel or difficult, but also "an important issue of state law" that is "best left to the Superior Court for determination." D.C. Water Br. 26-27. The issue is "whether the duty imposed on D.C. Water by the [Underground Facilities Protection] Act was delegable or non-delegable" to its contractor. *Id.* at 26. The district court did not rely on such an argument. Nor does D.C. Water explain why this issue is exceptionally appropriate for Superior Court adjudication. Indeed, D.C. Water does not expound upon the point at all beyond the phrases just quoted.

Perhaps D.C. Water means that the delegation issue is so important to the structure of the District government that it should be resolved by the District's own courts. But the District government itself did not give any indication that it regarded this -- or any other issue -- as important in that way. To the contrary, the District neither moved for a stay under *Colorado River* (or any other doctrine) nor joined the other defendants' motion. *See* D.C. Mot. to Dismiss, Dkt. 24, No. 17-cv-00621-TJK (June 9, 2017).[13] Even in this court, the District declined to submit a

[13] In fact, the District originally removed the Superior Court case to the federal district court. (It was later remanded.)

substantive brief, filing only a two-sentence statement that it "join[ed] the arguments presented" in D.C. Water's brief. D.C. Br. 1.

In any case, whether a state entity's duty is properly delegable is again the kind of issue that federal courts can and do resolve.[14] And, also again, it pales in comparison (and importance) to the "comprehensive" state statutory scheme that regulated the waters of the Colorado River. *See Colo. River*, 424 U.S. at 804, 819.

IV

For the foregoing reasons, we conclude that none of the relevant *Colorado River* factors, alone or in combination, provide the "exceptional circumstances" required to suspend a federal court's "virtually unflagging obligation" to exercise its jurisdiction. 424 U.S. at 813, 817. Accordingly, we reverse the order granting the motion to stay the federal proceedings.

*So ordered.*

---

[14] *See, e.g.*, *Doe v. Vigo Cnty., Ind.*, 905 F.3d 1038, 1044 (7th Cir. 2018); *M.J. ex rel. Beebe v. United States*, 721 F.3d 1079, 1084-85 (9th Cir. 2013); *Hansen v. Bd. of Trustees of Hamilton Se. Sch. Corp.*, 551 F.3d 599, 615 (7th Cir. 2008); *Wilson v. City of New York*, 89 F.3d 32, 36-37 (2d Cir. 1996).